818 So.2d 745 (2002)
STATE of Louisiana
v.
Patrick PALERMO.
State of Louisiana
v.
Frank Palermo.
Nos. 2000-K-2488, 2000-K-2499.
Supreme Court of Louisiana.
May 31, 2002.
*746 Gwendolyn K. Brown, Esq., Baton Rouge, Counsel for Applicant in No. 2000-K-2488.
Michelle H. Hesni, Esq., James A. Williams, Esq., Gretna, Harrel L. Wilson, Jr., Esq., New Orleans, Counsel for Applicant in No. 2000-K-2499.
Hon. Richard P. Ieyoub, Attorney General, Hon. Paul D. Connick, Jr., District Attorney, Richard C. Bates, Esq., Baton Rouge, Terry M. Boudreaux, Esq., Gretna, Alison Wallis, Esq., Harvey, Joseph E. Roberts, Esq., Counsel for Respondent in No. 2000-K-2488.
Hon. Richard P. Ieyoub, Attorney General, Hon. Paul D. Connick, Jr., District Attorney, Richard C. Bates, Esq., Baton Rouge, Terry M. Boudreaux, Esq., Gretna, Alison Wallis, Esq., Harvey, Counsel for Respondent in No. 2000-K-2499.
*747 VICTORY, J.
We granted writs in these consolidated cases to determine whether La. R.S. 14:54, criminalizing "placing combustible materials," unconstitutionally empowers the trial judge, rather than the jury, to determine under which arson provisions a defendant's actions fall for sentencing purposes. After reviewing the records and the applicable law, we find that La. R.S. 14:54 is unconstitutional and thus vacate and set aside the defendants' convictions and sentences under La. R.S. 14:54.

FACTS AND PROCEDURAL HISTORY
On September 9, 1998, the defendants, Frank and Patrick Palermo, allegedly initiated racially inspired altercations against two African-American males, Curtis Briggs and Frank Taylor. The incidents culminated in Frank Palermo pouring gasoline on Briggs' and Taylor's cars, with the intent to set the cars on fire, while one of the vehicles was occupied by Briggs' three-year-old son.
The defendants were charged in a three-count bill of information with one count each of violating La. R.S. 14:54, placing combustible materials, and two counts each of violating La. R.S. 14:107.2 (the Hate Crimes Statute), placing combustible materials having selected Briggs and Taylor as victims because of their race. As to Count I, the bill of information specifically alleged that the defendants violated La. R.S. 14:54 "in that they did place gasoline in on Curtis Briggs' 1985 Oldsmobile and Frank Taylor's 1995 Honda which was occupied by three-year-old Kelly Cornell with the specific intent to set fire to said automobiles at McArthur and Westbank Expressway."
La. R.S. 14:54 provides as follows:
The placing of any combustible or explosive material in or near any structure, watercraft, movable, or forestland, with the specific intent eventually to set fire to such structure, watercraft, movable, or forestland, shall constitute an attempt to commit arson within the meaning of the attempt article of this Code, and the court shall look to Articles 51 through 53 of this Code in order to determine which type of arson was attempted.
La. R.S. 14:51-53 define the crimes and punishments for the various grades and types of arson.[1] La. R.S. 14:51, the aggravated arson statute, provides as follows:
Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered.
Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than six nor more than twenty years, and shall be fined not more than twenty-five thousand dollars. Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:52, the simple arson statute, provides as follows:
A. Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51.
B. Whoever commits the crime of simple arson, where the damage done amounts to five hundred dollars or more, *748 shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not less than two years nor more than fifteen years.
C. Where the damage is less than five hundred dollars, the offender shall be fined not more than twenty-five hundred dollars or imprisoned with or without hard labor for not more than five years, or both.
The jury was charged with the elements of placing combustible materials under La. R.S. 14:54, i.e., that the defendants (1) placed a combustible or explosive material in or near a movable (2) with the specific intent eventually to set fire to the movable, and returned a verdict of guilty against both defendants. Frank Palermo was also found guilty of two counts of violating La. R.S. 14:107.2 and Patrick Palermo was found not guilty of violating La. R.S. 14:107.2. Following trial, Frank Palermo filed a "Motion to Quash Sentencing" and Patrick Palermo filed a "Motion in Arrest of Judgment," wherein each defendant argued that La. R.S. 14:54 was unconstitutional. These motions were denied.
At sentencing, the trial judge "look[ed] to Articles 51 through 53 of [the] Code," as instructed by La. R.S. 14:54, determined that the defendants intended to commit aggravated arson in violation of La. R.S. 14:51, and sentenced the defendants accordingly.[2] At the sentencing hearing, the trial judge found as to Patrick Palermo that "the underlying conviction demands that under the facts and circumstances that I heard during the trial, that I make a finding of aggravated arson for purposes of sentencing." As to Frank Palermo, the trial judge found as follows:
... the finding of this Court is that this sentencing range is based upon the crime of aggravated arson. I feel that there was clearly an intent to harm someone. That the placing of the combustible materials was done in such a manner that there was a baby in one of the cars, and, had that fire gone off, that baby could have well been killed.
The defendants appealed to the Fifth Circuit, which subsequently upheld their convictions, but vacated their sentences and remanded for resentencing.[3]State v. *749 Patrick Palermo, 99-1255 (La.App. 5 Cir. 7/25/00) 765 So.2d 1155; State v. Frank Palermo, 99-1254 (La.App. 5 Cir. 7/25/00), 765 So.2d 1139. We granted and consolidated both defendants' writ applications to determine whether La. R.S. 14:54 unconstitutionally empowers the trial court, rather than the jury, to determine which arson provision the defendants' actions fall under for sentencing purposes. State v. Patrick Palermo, 00-2488 (La.1/11/02), 806 So.2d 651 c/w State v. Frank Palermo, 00-2499 (La.1/11/02), 806 So.2d 652.[4]

DISCUSSION
Generally, statutes are presumed constitutional, and any doubt is to be resolved in the statute's favor. State v. Brenner, 486 So.2d 101, 103 (La.1986); Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 520 (La.1983). Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3. In construing statutes, courts must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless. State v. Union Tank Car Co., 439 So.2d 377, 381-82 (La.1983). The party challenging the constitutionality of a statute bears a heavy burden in proving that statute to be unconstitutional. State v. Brooks, 541 So.2d 801, 811 (La. 1989); State v. Griffin, 495 So.2d 1306, 1308 (La.1986).
To that end, the defendants point to the recent United States Supreme Court decision of Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In Jones, the defendant was charged with carjacking in violation of 18 U.S.C. § 2119, which provides that a person possessing a firearm who takes a motor vehicle from the person or presence of another by force or intimidation shall: (1) be imprisoned not more than 15 years; (2) if serious bodily injury results be imprisoned not more than 25 years; and (3) if death results be imprisoned for any number of years up to life. The indictment made no reference to the numbered subsections and charged none of the facts mentioned in them. A jury convicted the defendant of the charged offense and the trial judge, after determining that one of the victims suffered serious bodily injury, imposed a 25-year sentence. The defendant objected and argued that serious bodily injury was an element of the offense which had been neither pleaded in the indictment nor proved to the jury. The trial court denied the objection and the court of appeal later affirmed the ruling on the basis that the second subsection set out a sentencing factor and not an element of an independent offense.
The United States Supreme Court, in considering this issue, held that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." Jones, 119 S.Ct. at 1219. The Court reversed the lower courts' rulings and held that the carjacking statute established three separate offenses by the specification of distinct elements, each of which must be charged by indictment and proved to a jury beyond a reasonable doubt. Jones, 119 S.Ct. at 1228. The Court partly reasoned *750 that "subsections (2) and (3) ... not only provide for steeply higher penalties, but condition them on further facts (injury, death) that seem quite as important as the elements in the principal paragraph (e.g., force and violence, intimidation)." Id., 119 S.Ct. at 1219.
The defendants also rely on the more recent case of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the defendant fired several shots into the home of an African-American family that had recently moved into a previously all-white neighborhood. A New Jersey grand jury returned a 23-count indictment charging the defendant with a multitude of offenses; however, none of the counts referred to the hate crimes statute, and none alleged that he acted with a racially biased purpose. The defendant eventually pled guilty to three counts with the state reserving the right to request the court impose an enhanced sentence on the ground that he committed the offense with a "biased purpose," and, correspondingly, the defendant reserving the right to challenge the constitutionality of the hate crimes provision. The judge subsequently concluded that the crime was motivated by racial bias and doubled the original sentence in accordance with that provision.
The defendant appealed, arguing that the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt. The Appellate Division of the Superior Court of New Jersey upheld the enhanced sentence and reasoned that the state legislature decided to make the hate crimes enhancement a "sentencing factor," and not an element of the underlying offense. Apprendi, 120 S.Ct. at 2353. A divided New Jersey Supreme Court affirmed and reasoned, in part, that the statute did not "create a separate offense calling for a separate penalty, ... [but rather] the Legislature simply took one factor that has always been considered by sentencing courts [i.e. motive] to bear on punishment and dictated the weight to be given that factor." Id.
The United States Supreme Court, however, after an exhaustive review of the historical foundation for the principle that a jury must determine whether every element of the crime is proved beyond a reasonable doubt[5] and, recognizing that judges have long exercised discretion in imposing sentences within statutory limits prescribed by the legislature, reversed the New Jersey Supreme Court's ruling.[6] The Court expressly reaffirmed its holding in Jones and held that the Due Process Clause of the Fourteenth Amendment requires *751 that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi 120 S.Ct. at 2363.
After reviewing the statutory history of R.S. 14:54,[7] the Fifth Circuit in the present case distinguished Apprendi on the basis that:
[The present defendant] was not exposed to a greater punishment on the basis of the judicial finding rather than the jury's verdict. The sentencing range for placing combustibles did not increase after conviction. The trial judge's finding was permissible sentencing discretion in taking into consideration various factors relating to the offense and the offender and in imposing a judgment within the range prescribed by statute.
Palermo, 99-1254 at 20, 765 So.2d at 1152.
The Fifth Circuit thus took the position that Apprendi's rationale did not apply in this case because defendants' sentences fall within the sentencing range provided by La. R.S. 14:54. Under this provision, the trial court could have sentenced the defendant to a minimum term of one-year imprisonment if it concluded that the defendants' actions constituted attempted simple arson as defined in La. R.S. 14:52, or a maximum term of ten-years imprisonment if it concluded that their actions constituted attempted aggravated arson as defined in La. R.S. 14:51. Therefore, the trial court, in concluding that the defendants' actions fell under the aggravated arson provision, did not decide a fact which "increase[d] the penalty for a crime beyond the prescribed statutory maximum," but instead exercised its broad discretion in imposing sentences within the range provided by the legislature. State v. Cook, 95-2748 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996) (In sentence review, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'"); State v. Sepulvado, 367 So.2d 762, 767 (La.1979) (For legal sentences imposed within the range provided by the legislature, a trial court abuses *752 its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense.").[8]
However, the Fifth Circuit's reading of the holding in Apprendi is too narrow and does not control here. The premise of Jones and Apprendi's rationales is the bedrock principle that the state must try to a jury "all facts necessary to constitute a statutory offense, and proving those facts beyond a reasonable doubt." Apprendi, 530 U.S. at 483-484, 120 S.Ct. at 2359. The factual finding that the defendant created a foreseeable risk to human life is clearly an element of the statutory offenses of aggravated arson or attempted aggravated arson. In this case, to prove the defendants violated La. R.S. 14:54, which is intended to make the placing of combustibles with the intent to eventually set fire to certain delineated items an "attempt to commit arson," the state had to prove only that the defendants placed a combustible or explosive material in or near the victims' cars with the specific intent to eventually set fire to them. The state was not required to show whether it was foreseeable that human life might be endangered (and therefore that the defendants' actions constituted an aggravated arson). As noted above, this inquiry was conducted by the sentencing judge who considered the evidence presented at trial to determine whether such facts existed to warrant a harsher sentence. However, had the defendants been charged with attempted aggravated arson under La. R.S. 14:27 and 14:51, the state would clearly have had to prove to a jury beyond a reasonable doubt all of the elements of the underlying arson offense, i.e., that the defendants: (1) had the specific intent to commit damage by any explosive substance or the setting fire to any structure, *753 watercraft, or movable whereby it is foreseeable that human life might be endangered; and (2) did an act for the purpose of and tending directly toward the accomplishing of this object. While the legislature can validly define the elements of an attempt to commit arson under La. R.S. 14:54 as "the placing of any combustible or explosive material in or near any structure... with the specific intent eventually to set fire to such structure ...," it cannot remove from the jury the consideration of the elements of the underlying arson offense. Indeed, it would be absurd if the state could avoid having to prove to a jury beyond a reasonable doubt that the defendant created a foreseeable risk to human life by charging a defendant with placing combustible materials under La. R.S. 14:54, rather than attempted aggravated arson under La. R.S. 14:27 and 14:51.
Further, not only is the foreseeability that human life might be endangered the factor which distinguishes aggravated arson from simple arson, it is also the factor which determines whether the defendant is entitled to a twelve-person jury (for aggravated arson, a crime necessarily punishable by imprisonment at hard labor) or a six-person jury (for simple arson, a crime punishable by a term of imprisonment with or without hard labor).[9] La. Const. art. I, § 17; La.C.Cr.P. art. 782. Those jury requirements apply as well to the offenses of attempted aggravated arson and attempted simple arson. R.S. 14:27(D)(3) (requiring that the offender be "fined or imprisoned or both, in the same manner as for the offense attempted"). The distinction in jury size underscores the critical importance of this factual finding and its function as an essential element of aggravated or attempted aggravated arson, as opposed to a mere sentencing factor for the court.

CONCLUSION
The defendants have met their burden in this case of proving that La. R.S. 14:54 is unconstitutional in that it violates the Due Process Clause of the Fourteenth Amendment by depriving a criminal defendant of a right to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. By making "the placing of any combustive ... material in or near any structure ... with the specific intent eventually to set fire to such structure ... an attempt to commit arson within the meaning of the attempt article of this Code," the legislature was validly attempting to replace the general attempt provisions of La. R.S. 14:27 with more specific attempt provisions for arson related offenses. However, in directing "the court [to] look at Articles 51 through of 53 of this Code in order to determine which type of arson was attempted," the statute unconstitutionally deprives a defendant of the right to a jury determination on all of the elements of the attempted offense. As stated by the United States Supreme Court in Jones and Apprendi, such a deprivation violates a defendant's due process rights. Accordingly, the trial court erred in denying Frank Palermo's Motion to Quash Sentencing and Patrick Palermo's Motion in Arrest of Judgment, wherein the defendants argued that La. R.S. 14:54 was unconstitutional, and the court of appeal erred in affirming their convictions and sentences under La. R.S. 14:54.

DECREE
For the reasons stated herein, the judgments of the courts of appeal are reversed and the defendants' convictions and sentences under La. R.S. 14:54 are vacated and set aside. La. R.S. 14:54 is declared *754 unconstitutional. The matter of State v. Frank Palermo, No. 00-K-2499, is remanded to the trial court for further proceedings in accordance with this opinion.
STATE v. PATRICK PALERMO, NO. 2000-K-2488:
REVERSED. CONVICTION AND SENTENCE UNDER LA. R.S. 14:54 VACATED AND SET ASIDE. LA. R.S. 14:54 DECLARED UNCONSTITUTIONAL.
STATE v. FRANK PALERMO, NO. 2000-K-2499:
REVERSED AND REMANDED. CONVICTION AND SENTENCE UNDER LA. R.S. 14:54 VACATED AND SET ASIDE. LA. R.S. 14:54 DECLARED UNCONSTITUTIONAL.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., Dissenting.
I respectfully disagree with the majority's conclusion that LSA-R.S. 14:54 unconstitutionally deprives a defendant of the right to a jury determination on all of the elements of the attempted offense. In this case, the state tried to the jury all facts necessary to constitute the statutory offense of LSAR.S. 14:54 and proved these facts beyond a reasonable doubt. The trial judge then sentenced the defendant, taking into consideration various factors relating to the offense and the offender and imposed a judgment within the range prescribed by the statute. The court of appeal conducted an extensive review of the legislative history of LSA-R.S. 14:54 and held that 14:54 provides a sentencing directive to the trial judge whereby the trial judge must consider La. R.S. 14:51 through 53, and 14:27 in determining the sentencing range.
The finding made by the trial court as the basis for sentencing, that the defendants created a foreseeable risk to human life, did not "expose the defendant[s] to a penalty exceeding the maximum [they] would receive if punished according to the facts reflected in the jury verdict alone." Apprendi v. New Jersey, 530 U.S. 466, 482-83, 120 S.Ct. 2348, 2359, 147 L.Ed.2d 435 (2000).[1] A five-four court in Apprendi held that any fact which increases the punishment for a crime above the statutory maximum, absent the fact of a prior conviction, is subject to the jury's determination of proof beyond a reasonable doubt. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
I agree with the conclusion reached by the court of appeal that Apprendi's rationale does not apply in this case because the defendants' 10-year sentence falls within the sentencing range provided by R.S. 14:54. Under this provision, the trial court could have sentenced the defendants to a minimum term of one year imprisonment if it concluded that their actions constituted an attempted simple arson as defined in R.S. 14:52, or a maximum term of 10 years imprisonment if it concluded that their actions constituted an attempted aggravated arson as defined in R.S. 14:51. The trial court in concluding that the defendants' actions fell under the aggravated arson provision did not decide a fact which "increase[d] the penalty for a crime beyond the prescribed statutory maximum," but instead exercised its broad discretion in imposing a sentence within the range *755 provided by the legislature. State v. Cook, 95-2748, (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539.
Apprendi's prohibition "applies only when the disputed `fact' enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum." U.S. v. Lopez-Lopez, 282 F.3d 1 (1 Cir. 2/19/02) citing United States v. Caba, 241 F.3d 98, 101 (1st Cir.2001); see also Apprendi, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. "No Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum, even though a fact, determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." Lopez-Lopez, supra citing United States v. Robinson, 241 F.3d 115, 119. Accordingly, I would affirm the decision of the court of appeal.
Further, one of the defendants, Frank Palermo, was also charged and convicted under La. R.S. 14:107.2, Louisiana's Hate Crimes Statute. This case presents the first opportunity for this Court to interpret this statute. The Hate Crimes Statute was first enacted in 1997 for the purpose of addressing the wave of hate that we are faced with in our society. The statute defines hate crimes as certain enumerated criminal offenses in which the victim is selected because of that person's actual or perceived class or status, including race.[2] Enforcement of this statute requires the violation of an underlying offense. In this case, the underlying offense is La. R.S.14:54, placing combustibles. It is clear that the altercation in this case was racially motivated, as the victims were selected because of their race. The facts of this case personify the exact behavior which our legislature contemplated in enacting the Hate Crimes Statute.
The result of the majority's conclusion that La. R.S. 14:54, the statute constituting the underlying offense in this case, is unconstitutional, is that the Hate Crimes conviction cannot stand. In my opinion, this was a heinous crime (pouring gasoline on the victim's vehicle and attempting to set it on fire with a three year old inside) for which Frank Palermo should not go unpunished.
NOTES
[1] See La. R.S. 14:51 (aggravated arson); La. R.S. 14:52 (simple arson); La. R.S. 14:52.1 (simple arson of a religious building); La. R.S. 14:53 (arson with intent to defraud).
[2] La. R.S. 14:27, the general attempt statute in the criminal code, provides that for an attempt of any crime, the defendant "shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." The trial judge sentenced Patrick Palermo to serve three years in the custody of the Department of Corrections. Following a multiple offender proceeding in which Patrick Palermo admitted to having a prior conviction for illegal possession of stolen things, the trial judge vacated the original sentence and imposed a sentence of five years, to run concurrently with any sentence received as a result of his parole revocation on the illegal possession of stolen things. Frank Palermo was sentenced to ten years imprisonment at hard labor with the first two years to be served without benefit of parole, probation, or suspension of sentence for the offense of placing combustible materials, and to two terms of five years imprisonment for the hate crimes offenses, with all terms to run consecutively.
[3] As to Frank Palermo, the Fifth Circuit noted that the sentencing provision in the arson statute, La. R.S. 14:51, provides that "Two years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence." Because under La. R.S. 14:54, the defendant's conduct constituted an attempted aggravated arson, the court of appeal concluded the judge could only impose one year "without benefit." See La. R.S. 14:27 ("Such fine or imprisonment shall not exceed one-half the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.") As to Patrick Palermo, the appellate court ruled that during the habitual offender colloquy the district judge did not properly advise the defendant of his right to remain silent.
[4] The validity of Frank Palermo's conviction and sentence under La. R.S. 14:107.2, the Hate Crimes Statute, is not before us.
[5] See In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) (holding "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").
[6] The Court distinguished an "element" of a greater offense from a "sentencing factor" as follows:

The term [sentencing factor] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.
Apprendi, 530 U.S. at 494, n. 19, 120 S.Ct. 2348.
[7] The placing of combustible materials with the intent to set fire to any house or building or watercraft has been a crime in Louisiana since 1870. See Revised Statutes of 1870, § 846. The intent of the statute, especially the provision dealing with the "specific intent to eventually set fire," can be gleaned from the following Reporter's Comment to La. R.S. 14:54:

Scope:
To constitute an attempt there must be more than mere intent; preparation alone is not sufficient. The performance of an overt act, short of the completed crime of arson, is necessary. It need not be the last proximate act prior to completion of arson. State v. Taylor, 47 Or. 455, 84 P. 82 (1906); State v. Dumas, 118 Minn. 77, 136 N.W. 311 (1912).
In some jurisdictions, the collection and preparation of materials in a room for the purpose of setting fire to them, unaccompanied by a present intent to immediately set fire to them does not constitute an attempt to commit arson. Comm. v. Peaslee, 177 Mass. 267, 59 N.E. 55 (1901). The intent to set fire immediately, where the materials have not yet been ignited, is often difficult of proof. This section is intended to make it clear that any placing of materials with intent to set fire to them constitutes an attempt to commit arson.
As originally enacted, the crime carried its own separate penalty provision. Succeeding amendments and reenactments carried forward that basic substantive framework until 1946 La. Acts 305 in which the legislature adopted the present structure of La. R.S. 14:54 and thereby referred to the trial judge the task of determining which grade of attempt arson had been committed by the defendant.
[8] The State argues that the Fifth Circuit's ruling is consistent with the decision of McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in which the United States Supreme Court addressed the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act, which provided that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years imprisonment if the sentencing judge, upon considering the evidence presented at trial and any additional information presented at the sentencing hearing, finds that the defendant visibly possessed a firearm during the commission of the offense. The Court held that the judge's determination was a sentencing consideration and not an element of the offense that must be proved beyond a reasonable doubt. McMillan, 477 U.S. at 93, 106 S.Ct. at 2420. The Court noted that in Patterson v. New York, 432 U.S. 197, 214, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977), it rejected the claim that whenever the state links the "severity of punishment" to "the presence or absence of an identified fact" the state must prove that fact beyond a reasonable doubt. McMillan, 477 U.S. at 84, 106 S.Ct. at 2415. The Court also stressed that in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive. Id., 477 U.S. at 85, 106 S.Ct. at 2415. Cf. Almendarez-Torres v. U.S., 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (prior convictions increasing the maximum penalty not an element of the offense and need not be charged in the indictment). However, in Apprendi, the Court limited the holding of McMillan "to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury verdicta limitation identified in the McMillan opinion itself." Apprendi, 530 U.S. at 487, n. 13, 120 S.Ct. 2348. Similarly, in the case of Edwards v. U.S., 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), involving Federal Sentencing Guidelines which required the judge, and not the jury, to determine both the kind and the amount of drugs at issue in a drug conspiracy, the Court held the guidelines to be constitutional because the sentence imposed under the guidelines was within the range authorized by the drug conspiracy statute.
[9] In this case, the defendants were tried by a twelve-person jury.
[1] The Court in Apprendi declared a New Jersey statutory scheme for a Hate Crime unconstitutional because it allowed a court to impose a sentence exceeding the statutory maximum for the crime of which the defendant was convicted when the court found by a preponderance of the evidence that the defendant was motivated by a statutorily defined bias, which included race.
[2] La. R.S. 14:107.2 provides, in pertinent part:

A. It shall be unlawful for any person to select the victim of the following offenses against person and property because of actual or perceived race, age, gender, religion, color, creed, disability, sexual orientation, national origin, or ancestry of that person or the owner or occupant of that property or because of actual or perceived membership or service in, or employment with, an organization: first or second degree murder; manslaughter; battery; aggravated battery; second degree battery; aggravated assault with a firearm; terrorizing; mingling harmful substances; simple, forcible, or aggravated rape; sexual battery; aggravated sexual battery; oral sexual battery; carnal knowledge of a juvenile; indecent behavior with juveniles; molestation of a juvenile; simple, second degree, or aggravated kidnaping; simple or aggravated arson; placing combustible materials; communication of false information of planned arson; simple or aggravated criminal damage to property; contamination of water supplies; simple or aggravated burglary; criminal trespass, simple, first degree, or armed robbery; purse snatching; extortion; theft; desecration of graves; institutional vandalism; or assault by drive-by shooting. (Emphasis added)