# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 26, 2011

No. 09-30913

Lyle W. Cayce
Clerk

CASSANDRA P. NEWTON

Petitioner-Appellant

v.

AVOYELLES WOMEN'S CORRECTIONAL CENTER, Warden

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
U.S.D.C. No. 3:09-CV-193

Before KING, DAVIS and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In this habeas petition under § 2254, Cassandra Newton argues that the state court erred in its application of *Apprendi*[1] to her conviction and sentence. We agree.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

No. 09-30913

I.

Cassandra P. Newton, Louisiana prisoner # 368326, was charged by indictment with (1) second degree murder of her husband, Ivory Newton (count one), (2) arson with intent to defraud (count two), and (3) obstruction of justice by attempting to remove and conceal evidence of (a) arson with intent to defraud and (b) aggravated arson (count three). *State v. Newton*, 973 So. 2d 916, 919, 921 (La. Ct. App. 2007). To establish aggravated arson, the state was required to prove that it was foreseeable that human life might be endangered as a result of the arson. La. R.S. 14:51.

During Newton's jury trial, the state produced evidence that the Newtons lived in a rental house in Monroe, Louisiana, which they planned to burn down in exchange for the insurance proceeds on a policy covering the house's contents. *Newton*, 973 So. 2d at 918. About five months before the fire, Cassandra obtained insurance policies covering the house's contents. *Id.* She also bought a life insurance policy on Ivory's life, with a rider allowing for the recovery of additional benefits in the event Ivory died in a fire in the house. *Id.* Cassandra was the sole beneficiary of the policies. *Id.*

A few hours before the fire, Cassandra and Ivory rented a truck to move some of their furniture from the house to a storage facility. *Id.* They also moved some of their newer furniture to Cassandra's sister's house, in exchange for old furniture, which they moved to the house that burned later that day. *Id.* The owner of the truck thought it strange that the Newtons were so insistent that the furniture be moved that very evening. *Id.* At the time of the fire, the house did not contain much at all. *Id.*

With respect to the fire itself, investigators found that the fire had been intentionally set, as evidenced by the strong odor of gasoline in the house and a water can containing gasoline found in the house. *Id.* The water can was the only one of its kind sold by the local Wal-Mart within the month before the fire.

2

*Id.* The store's security tape showed Ivory arriving at the Wal-mart in Cassandra's car with another person sitting in the front seat. *Id.* Inside the store, Ivory purchased the water can and a pair of black gloves identical to gloves found at the scene of the fire. *Id.* Cassandra was observed later that evening with an unidentified male at a Texaco gas station, where she purchased gas and other items. *Id.* An autopsy revealed that Ivory died from smoke and soot inhalation, meaning that he was alive when the fire began. *Id.*

Following the close of the evidence, the jury returned verdicts of not guilty on counts one and two and guilty on count three. *Id.* at 919. The trial court sentenced Newton to 10 years in prison. *Newton*, 973 So. 2d at 919. The trial court later adjudicated Newton a third felony offender, however, and sentenced her to 15 years in prison without the benefit of parole. *Newton*, 973 So. 2d at 919.

Newton appealed her conviction and sentence, raising two assignments of error: (1) the trial court failed to list attempted obstruction of justice as a responsive verdict, and (2) the trial court violated her Sixth Amendment rights and the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it enhanced her sentence on the obstruction of justice offense based on its own factual findings rather than findings made by the jury beyond a reasonable doubt (Sixth Amendment claim). *Newton*, 973 So. 2d at 919-22.

With respect to her Sixth Amendment claim, Newton specifically argued that the jury's guilty verdict on the obstruction offense (count three) was ambiguous in that it did not specify whether Newton obstructed the investigation of (a) the arson with intent to defraud offense or (b) the aggravated arson offense. *Newton*, 973 So. 2d at 920. Newton argued, therefore, that the trial court violated her Sixth Amendment rights when it determined that the jury had convicted her of obstructing the investigation of both underlying offenses and sentenced her on the basis of the more serious underlying offense,

aggravated arson. *Newton*, 973 So. 2d at 920.   The appellate court rejected Newton's arguments and affirmed her conviction and sentence. *Newton*, 973 So. 2d at 922.   The appellate court reasoned that because count three of the indictment—the obstruction of justice count—was worded in the conjunctive, the trial court did not err in concluding that the jury had convicted Newton of obstructing the investigation of both underlying offenses. *Id.*   The appellate court further reasoned that "[t]he conjunctive listing of the crimes . . . subject[ed] Newton to the penalty provisions for either crime." *Id.*   Finally, the appellate court noted that Newton never attempted to quash count three of the indictment. *Id.*

The Supreme Court of Louisiana permitted Newton to file an out-of-time petition for writ of certiorari.  In her petition, Newton raised the same claims she raised on direct appeal.  The court subsequently denied Newton's petition. *State v. Newton*, 998 So. 2d 90 (La. 2009).

Newton filed a § 2254 petition, raising only her Sixth Amendment claim. The magistrate judge (MJ) recommended that Newton's claim be rejected on the merits and that Newton's § 2254 petition be dismissed with prejudice.  The MJ concluded that it was the jury, not the trial judge, who determined that Newton was guilty of having obstructed justice by attempting to remove and conceal evidence of both arson with intent to defraud *and* aggravated arson as charged in the indictment.  The district court thereafter independently reviewed the record, including Newton's objections to the MJ's report, and dismissed Newton's § 2254 petition with prejudice.

Newton timely filed a notice of appeal, a motion for leave to proceed in forma pauperis (IFP) on appeal, and a motion for a COA.  The district court granted Newton IFP status but denied her a COA.  This court granted Newton COA on the *Apprendi* issue.

No. 09-30913

II.

A.    Standard of Review

This court reviews issues of law de novo and findings of fact for clear error, applying the same deference to the appellate court's decision as the district court must under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007). Under the AEDPA, habeas relief may not be granted with respect to a claim that was adjudicated on the merits in state court, unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); *see Powell v. Quarterman*, 536 F.3d 325, 333 (5th Cir. 2008).

B.    Analysis

Newton, proceeding pro se, argues that the trial court violated *Apprendi* when the trial court—rather than the jury—found that she had obstructed justice with respect to both the aggravated arson offense and the arson with intent to defraud offense and sentenced her to a term of imprisonment based on the aggravated arson offense, the more serious crime.

The "clearly established federal law" applicable to Newton's claim is that developed by the Supreme Court in *Apprendi* and its progeny. In *Apprendi*, the Supreme Court determined that sentence enhancements based on judicial fact findings, which increased the range of punishment beyond the offense for which the jury found the defendant guilty, violated the Due Process Clause. 530 U.S. at 469, 490. Two years later, in *Ring v. Arizona*, 536 U.S. 584, 602 (2002), the Supreme Court applied the holding and its reasoning in *Apprendi*, noting that the dispositive question "is not one of form, but of effect." "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a

fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring*, 536 U.S. at 602.

The indictment in the instant case reflects that the State charged Newton with second degree murder in count one, arson with intent to defraud in count two, and obstruction of justice in count three. More specifically, count three of the indictment reads as follows:

> Count 3--Obstruction of justice--On or about 23 of Aug 2003 intentionally, willfully and unlawfully commit the crime of obstruction of justice by the following, to-wit: attempting to remove and conceal evidence of arson with intent to defraud and aggravated arson, contrary to the provisions of R.S. 14:130.1.

The trial transcript reflects that the court read the indictment to the jury.

The obstruction of justice charge in Newton's indictment is worded in the conjunctive: Newton is charged with obstructing justice in relation to arson with intent to defraud and aggravated arson. Louisiana law permits charging in the conjunctive if the "offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results." LA. CODE CRIM. PROC. ANN. art. 480. ("Article 480"). In such cases, "proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction." *Id.; see, e.g., State v. Kotwitz*, 549 So. 2d 351, 362 (La. Ct. App. 1989) (crime of inciting a felony); *State v. Robins*, 915 So. 2d 896, 900-01 (La. Ct. App. 2005) (crime of first degree robbery).

Thus, under Article 480, the jury could have based its verdict on a finding that the defendant obstructed justice with respect to either or both of the underlying offenses. Accordingly, a finding of guilt on the conjunctively charged obstruction charge does not indicate whether the jury found Newton guilty of obstructing justice in relation to one or both of the underlying crimes listed. In addition, neither the jury instructions or the verdict form in this case provide

No. 09-30913

any information as to which choice the jury may have made. The trial court did not explain in its instructions that Newton was charged with obstructing justice by attempting to remove and conceal evidence of arson with intent to defraud and evidence of aggravated arson. The court also did not instruct the jury as to sentences applicable to obstruction of justice offenses. The jury verdict form reflects that the jury returned a general verdict on the obstruction of justice charge with no indication of which underlying crime Newton obstructed.

This failure creates the issue in this case because Louisiana law sets different sentences for a conviction of obstruction of justice depending on the underlying crime. Under Louisiana law, a person obstructs justice when, inter alia, he tampers with evidence, knowing that such acts have affected, reasonably may affect, or will affect an actual or potential present, past, or future criminal proceeding. LA. REV. STAT. ANN. art. 14:130.1(A); ; *State v. Jones*, 610 So. 2d 1014, 1016 (La. Ct. App. 2007); *State v. Hookfin*, 602 So. 2d 757, 758-59 (La. Ct. App. 1992). The penalty for obstruction of justice is determined by the nature of the underlying criminal proceeding obstructed. "When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed," the maximum term of imprisonment is 40 years at hard labor. LA. REV. STAT. ANN. art. 14:130.1(B)(1). If "the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed," the maximum term of imprisonment is 20 years at hard labor. LA. REV. STAT. ANN. art. 14:130.1(B)(2). If "the obstruction of justice involves any other criminal proceeding," the maximum term of imprisonment is five years, with or without hard labor. LA. REV. STAT. ANN. art. 14:130.1(B)(3). A person who commits arson with intent to defraud shall be "imprisoned with or without hard labor for not more than five years." LA. REV. STAT. ANN. art. 14:53. A person who commits aggravated arson – that is arson under circumstances

7

where it is foreseeable the human life may be endangered – "shall be imprisoned at hard labor for not less than six nor more than 20 years." LA. REV. STAT. ANN. art. 14:51.

The trial court concluded that the jury found Newton guilty of obstruction of both underlying offenses charged in the indictment and sentenced Newton to a term based on the more serious underlying crime of aggravated arson. Based on the wording of the indictment, the jury instructions and    LA. CODE CRIM. PROC. ANN. art. 480, we find that the state court's decision is an unreasonable application of clearly established federal law, particularly *Apprendi*.

Our conclusion is support by the Louisiana Supreme Court's decision in *State v. Palermo*, 818 So. 2d 745, 747, 752-54 (La. 2002). *Palermo* held that Louisiana's sentencing scheme for the crime of placing combustible materials with intent to set fire, which referred to three possible arson statutes for the appropriate level of punishment, required the trial judge rather than the jury to determine which arson provision the defendant's actions fell under to determine punishment and was therefore unconstitutional under *Apprendi*. In *Palermo*, the defendants, Frank and Patrick Palermo, "place[d] gasoline on Curtis Briggs's 1985 Oldsmobile and Frank Taylor's 1995 Honda which was occupied by three-year-old Kelly Cornell with the specific intent to set fire to said automobiles." *Id.* at 747. The defendants were charged with and convicted of one count each of violating article 14:54 of the Louisiana Revised Statutes Annotated[2], placing combustible materials. 818 So.2d at 747-48. Article 14:54 provided as follows:

> The placing of any combustible or explosive material in or near any . . . movable, . . . with the specific intent eventually to set fire to such . . . movable, . . . shall constitute an attempt to commit arson

---

[2] Article 14:54 was repealed in 2008 as a result of the *Palermo* decision. *See* LA. REV. STAT. ANN. art. 14:54, *repealed by* Acts 2008, No. 220, § 13, eff. June 14, 2008.

> within the meaning of the attempt article of this Code, and the court shall look to Articles 51 through 53 of this Code in order to determine which type of arson was attempted.

*See Palermo*, 818 So. 2d at 747.  At sentencing, the trial judge "looked to Articles 51 to 53 of the Code, as instructed by La. R.S. 14:54, determined that the defendants intended to commit aggravated arson in violation of La. R.S. 14:51, and sentenced the defendants accordingly."  *Id.* (internal quotation omitted). The Louisiana Supreme Court subsequently vacated the Palermo's convictions and sentences, finding article 14:54 to be unconstitutional in light of *Apprendi*. *Id.* at 747, 753-54.

The Louisiana Supreme Court reasoned that to prove that the Palermos violated article 14:54, the state had to prove that the defendants placed a combustible or explosive material in or near the victims' cars with the specific intent to eventually set fire to them but did not have to prove whether it was foreseeable that human life might be endangered (i.e., aggravated arson).  *Id.* at 752.  The court concluded, therefore, that the legislature, "in directing the court to look at Articles 51 through 53 of this Code in order to determine which type of arson was attempted," unconstitutionally deprived a defendant of the right to a jury determination on all of the elements of the offense.  *Id.* at 753.

The essential question in both *Palermo* and this case is whether the relevant findings relative to sentencing were made by the trial judge or the jury. In *Palermo*, it was clear that the court made the relevant determination and, in so doing, violated *Apprendi*.  *Id.* at 752-54.  We conclude that the same violation occurred in this case. Newton was charged with obstructing justice by attempting to remove and conceal evidence of arson with intent to defraud *and* of aggravated arson.  Although the obstruction of justice offense was worded in the conjunctive, the State was permitted to prove that Newton obstructed justice in the disjunctive, i.e., that she attempted to remove and conceal evidence of

arson with intent to defraud *or* that she attempted to remove and conceal evidence of aggravated arson. LA. CODE CRIM. PROC. ANN. art. 480. Thus, proof of obstruction with respect to either underlying offense was sufficient to sustain Newton's conviction of obstruction of justice. *See, e.g., Kotwitz*, 549 So. 2d at 362 (holding that although the indictment was worded in the conjunctive, "[i]t was proper for the trial court to instruct the jury that it could convict the defendant if it found that defendant either incited or procured a felony.").

Even though proof as to one of the underlying offenses was sufficient under Louisiana law to sustain Newton's conviction for obstruction of justice, it was not sufficient under *Apprendi* to trigger the increased penalty in article 14:130.1(B)(2) of the Louisiana Revised Statutes Annotated. The jury instructions and the jury verdict form failed to reference either of the underlying offenses in connection with the obstruction of justice charge. Thus, the verdict does not reveal whether the jury found that Newton obstructed justice by attempting to conceal one or both of the underlying offenses. In addition, the jury found Newton not guilty of second degree murder, which included murder while engaged in the commission or attempted commission of aggravated arson, and not guilty of arson with intent to defraud. *See, e.g., United States v. Conley*, 349 F.3d 837, 840-41 (5th Cir. 2003) (finding that, in light of the general jury verdict, it was "more plausible that the jury did not convict Conley for a money laundering conspiracy because it actually acquitted Conley of the substantive counts of money laundering"). The trial court by necessity had to make the fact finding that Newton obstructed justice by attempting to conceal the underlying crime of aggravated arson in order to impose the higher sentence allowed by that charge. Because that finding resulted in a greater sentence in violation of *Apprendi*, the sentence is unconstitutional.

No. 09-30913

III.

Based on the foregoing, the state appellate court unreasonably applied *Apprendi* when it reasoned that "[t]he conjunctive listing of the crimes . . . subject[ed] Newton to the penalty provisions for either crime." *Newton*, 973 So. 2d at 922. Accordingly, we reverse the judgment of the district court and remand the case with instructions to grant the writ unless, within 120 days or such additional time as the district court shall reasonably allow, the state resentences Newton in conformity with this opinion.

REVERSED and REMANDED.