LOLLEY, J.
11 This appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Adair Asset Management, *503 LLC, brought an- action to quiet title on property for which it held a tax sale certificate .acquired .during the 2010 City of Shreveport t&x sale.. The trial court ruled in favor of defendant, Michael Harris Tur-ney, finding the tax sale null and of no effect due to the City of Shreveport’s failure to provide proper presale notice. For the following reasons, we reverse the judgment of the trial court, vacate the award of reimbursement, and enter a judgment to quiet and confirm the title held by Adair Asset Management, LLC.
FACTS
The property in dispute is located within the City of Shreveport (the “City”) and has the municipal address of 1805 Line Avenue, Shreveport, Louisiana 71101 (the “property”). Michael Harris Turney acquired the property in 2000 by credit sale deed which transferred ownership of the property from Warren and Mary Long to Turney.[1] The deed was recorded in the Caddo Parish conveyance records on January 14, 2000. At the time he acquired the property, Turney was living at 733 Olive Street, Shreveport, Louisiana 71104, and listed that address as his mailing address of record on the deed.
Turney is the owner and director of a modeling agency and school, which he has operated out of the property siiice he acquired it in 2000. Turney testified that after acquiring the subject property, he also began using it as a residence, but retained 733 Olive Street as a rental property. _J¿Turney’s business requires him to travel extensively, but in his absence he has employees collect,his mail and maintain his home and business.
After the purchase of the property, Tur-ney signed a multiple indebtedness mortgage and security agreement for business and commercial purposes with AmSouth Bank d/b/a Regions Bank (“Regions Bank”). The’ mortgage was secured by the property, and recorded in the Caddo Parish conveyance records on January 17, 2007.[2]
' In 2007, Turney failed to pay the ad valorem taxes, and the property was sold to G.J. Tax, Sale Properties,' LLC (“G.J. Tax”) in the 2008 City tax sale. At that time, Turney was listed as the assessed owner of the property. The 2008 tax sale certificate in favor of G.J. Tax was recorded in the Caddo Parish conveyance records on June 27,2008.
In 2008, the taxes again went unpaid, and the property Was sold in the 2009 City tax sale to Cody Investments, LLC (“Cody Investments”). At that time, G.J. Tax was listed as the assessed owner of the property. The 2009 tax sale certificate in favor of Cody Investments was filed in the Cad-do Parish conveyance records on June 26, 2009. [1] ■
In 2009, the taxes again went unpaid, and the property was sold in the 2010 City tax sale to Adair Asset Management, LLC (“Adair”). At that time, Husker Partners/ U.S. Bank (“Husker Partners”) and Cody Investments were listed as the assessed owners • of the property,[3] The 2010 tax sale ^certificate in favor of Adair was filed *504 in the Caddo Parish conveyance records on July 2, 2010.[4]
At the time when the City mailed pre-sale notices for the 2010 City tax sale, the 2009 Caddo Parish tax roll listed Husker Partners and Cody Investments as the tax debtor, with a recorded address of 405 North 115th Street, Suite 100, Omaha, Nebraska 68154-2507. The tax roll stated that Husker Partners had acquired an interest in the property during a 2008 tax sale, and that Cody Investments had acquired an interest in a 2008 City tax sale.
The City Finance Department/ Revenue Division mailed the following tax notices concerning the 2010 tax sale of the property:
• November 22, 2009: Original tax no- ■ tice mailed by regular mail;
• February 3, 2010: Second tax notice mailed by regular mail;
• March 4, 2010: Occupant letters with tax notice mailed by regular mail;
• April 5, 2010: Final immovable tax notices mailed by regular mail; and,
• June 21, 2010: Corporal letters mailed to property owners notifying them that their property was sold at tax sale and adjudicated with info expressing their rights and time to redeem. Also included all addresses and ownership updates from the Caddo Assessor’s Office since the tax roll was approved.
The original, second, and final notices were mailed to the assessed owner/tax debtor at the Omaha,, Nebraska, address per the 2009 Caddo | ¿Parish tax roll. The occupant letter was mailed to the property at 1805 Line Avenue.
In addition to the tax debtor and occupant notices mailed presale, public notice of the tax sale of the property was published in The Shreveport Times on both May 2 and May 30, 2010. The public notice listed Husker Partners and Cody Investments as the assessed owners of the property. On June 21, 2010, the City mailed post-sale notice to the assessed property owner, Cody Investments.
The key notice relied on by Adair in this appeal occurred on September 5, 2012, nine months prior to the expiration of the three-year period for redemption for the 2010 tax sale. Adair sent several notices at that time concerning the right to redeem the property to all interested tax sale parties, which included: .Turney, Am-South Bank d/b/a/ Regions Bank, Bank One, N.A. d/b/a Morgan Chase & Co., G.J. Tax, and Cody Investments. These notices informed interested parties of the July 2, 2013, deadline for the period of redemption concerning the property. Adair sent two separate notices addressed to Turney by certified mail: one to 733 Olive Street and the other to the property. The Olive Street letter was returned undeliverable, but all other letters were signed for and received by the respective parties. Specifically, the letter sent to the property at 1805 Line Avenue was signed, on September 7, 2012, by Lisa Cade, Turney’s employee. The July 2, 2013, deadline for redemption passed without any response from Turney.
|fiOn March 10, 2014, Adair filed a petition to quiet title, naming Turney, Regions Bank, Cody Investments, and G.J. Tax as defendants. Turney answered the petition and subsequently filed a reconventional demand to annul the 2010 tax sale pursuant to Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); see La. R.S. 47:2266. None of *505 the other defendants answered the suit.[5]
A trial ensued, at which Adair called one witness, Sally Tausend, U.S. Assets title abstractor, who prepared the title abstract for the property to determine ownership and provide all interested parties with legal notice of the right to redeem the property. Tausend explained her thorough search of the public records for all mailing addresses and domiciles for the interested parties. The original abstract was prepared in August 2012, and revealed the multiple successive tax sales over the past years. Tausend testified that all notices were sent certified mail, return receipt requested,, and were prepared in the format recommended by La. R.S. 47:2156(B) (3).
Turney called Alonzo Harris, revenue auditor for the City, to testify to the City’s records concerning the 2010 tax sale. The City’s records indicate that both pre and post-sale notices were mailed to the record tax debtor, Cody Investments, at its record address via regular mail. Additionally the City’s records indicate that “Occupant Letters With Tax Notice” were mailed to the property at 1805 Line Avenue. Harris testified that the City did not receive any notices returned undeliverable because returned notices | r,would have been placed in the file and require further research. The City had no record of sending notice to Regions Bank, mortgagee.
After the trial, an opinion was issued concluding Turney did not receive, presale notice from the City regarding the 2010 tax sale, in violation of the constitutional due process requirement set forth in Mennonite, supra. It further found the occupant notice sent by the City via regular mail did not constitute sufficient notice under Louisiana law, and the post-sale notice of the right to redeem sent by Adair in September 2012, could not cure the insufficiency in presale notice. A subsequent hearing was held to determine costs and fees due to Adair by Turney based on the trial court’s ruling in favor of Turney. In accordance with the opinion issued previously, a judgment in this matter was entered declaring the 2010 tax sale null and of no effect. Adair filed a motion for new trial, which was denied, and this appeal followed.
DISCUSSION
On appeal Afiair- argues that the trial court failed to apply the new statutory regime implemented by the Louisiana Legislature concerning provisions related to ad valorem taxes, tax sales, and re-demptions, which became effective January 2009, and are applicable to the 2010 tax sale at issue. Adair contends the trial court erred in finding the occupant notice mailed by the City to the property at 1805 Line Avenue insufficient to adequately apprise Turney of the 2009 delinquent property taxes before the 2010 tax sale took place. Further, Adair claims the redemption notices it sent to all interested tax sale parties pursuant ■ to La. R.S. 47:2156 served to|7duly notify the parties and cure any possible deficiencies in presale notice. Adair also argues that the new statutory regime abolished the practice of invalidating tax sales as absolute nullities based upon deficient presale notice.' Instead, the 2008 revision created a system in which failure by the, taxing authorities to give notice is a relative nullity capable of being cured. Adair maintains that in finding the 2010 tax sale null and of no effect, the trial court erred in not considering if Turney had met the burden of proving that the tax *506 sale was null under the three exclusive causes for relative nullity pursuant to La. R.S. 47:2286. We agree.

The New Statutory Regime after the 2008 Revision

During the 2008 regular legislative session, the Louisiana Legislature revised the Louisiana Revised Statutes Title 47: Subtitle III: Chapter 5 (the “new Act”) to amend, restate, and organize the law pertaining to property tax payment and collection procedure, tax sales, and adjudicated property. The purpose of the new Act was to encourage the payment and efficient collection of property taxes,-satisfy the requirements of due process, pi'ovide a fair process for the redemption of tax sale property, and otherwise encourage the return of such properties to commerce. La. R.S. 47:2121. This new system precludes tax debtors from availing themselves of the certain mistakes that will sometimes occur in a governmental entity’s system of record keeping. It allows tax sale purchasers the opportunity to ensure certainty and safeguard against common procedural defects. The statutory notice of the right to.redeem is reasonably calculated under all circumstances to apprise interested parties of tax sale, proceedings regarding |Ra property and afford them an opportunity to present their .objections or pay the taxes. See La. R.S. 47:2286, Comment (b). This entirely new framework under the new Act went into effect January 2009, and consequently there-is little jurisprudence upon which to consider.
The paramount question in all cases of statutory interpretation is legislated intent; ascertaining the reason that triggered the enactment of the law is the fundamental aim of statutory interpretation. Anderson v. Ochsner Health Sys., 2013-2970 (La.07/01/14), 172 So.3d 579, 581. Generally, statutes are presumed constitutional, and any doubt is to be resolved in the statute’s favor. State v. Tucker, 49,950 (La.App.2d Cir.07/08/15), 170 So.3d 394, 421. Accordingly, in an attack upon a legislative act as falling within an exception to the legislature’s otherwise plenary power, an opponent must establish more than that the constitutionality of the legislation is fairly debatable. Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993).
The interpretation of any statutory provision starts with the language of the statute itself. Oubre v. La. Citizens Fair Plan, 2011-0097 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and "unambiguous arid its application does not lead to absurd consequences, its language must be given effect, and its - provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. C.C. art. 11; La. R.S. 1:3. Words and [nphrases must be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Colvin v. La. Patient’s Compensation Fund Oversight Bd., 2006-1104 (La.01/17/07), 947 So.2d 15, 19. While the Official Revision Comments are not the law, they may be helpful in determining legislative intent. Arabie v. CIT-GO Petroleum Corp., 2010-2605 (La.03/13/12), 89 So.3d 307, 312.

Tax Sale Notice

Persons owning property within a state are charged with knowledge of *507 relevant statutory provisions affecting the control or disposition of that property. Fields v. State, 1998-0611 (La.07/08/98), 714 So.2d 1244; La. C.C. art. 5. Under due process guarantees, to afford adequate notice of a statutory provision affecting the control or disposition of property, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply. Fields, supra. Failure to pay the statutory impositions in addition to the ad valorem taxes shall cause the immovable property to be subject to the same provisions of law that govern tax sales of immovable property. La. R.S. 47:2128.
Both the Fourteenth Amendment to the United States Constitution and Art. I, § 2 of the Louisiana Constitution guarantee due process of law before the deprivation of life, liberty, or property. It is, therefore, well [ ^established that pri- or to instituting ah action which will affect an interest in property, a state must provide “notice reasonably calculated under all circumstances, to apprise interested parties of pendency of the action and afford them an opportunity to present their objections.” Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); Mennonite, supra at 795, 103 S.Ct. 2706; Hamilton v. Royal Int’l Petroleum Corp., 2005-0846 (La.02/22/06), 934 So.2d 25, 30. Moreover, due process requires that the state give “notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party ... if its name and address are reasonably ascertainable.” Mennonite, supra at 802, 103 S.Ct. 2706.
Turney, as a property owner, has a duty to pay taxes and is charged with acquiring knowledge of the laws which affect his property. Turney acquired the subject property in 2000. Presumably, he paid the property taxes for all years prior to the first delinquency in 2007. Further there is no indication in the record, nor has it been alleged by Turney, that he failed to receive notice for the two previous tax sales of the property in 2008 and 2009. Turney had knowledge that taxes were' due annually and failure to pay property taxes would consequently result in the property being sold at a tax sale.

Presale Notice: Delinquency and Tax Sale Notice

Adair argues the trial court erred in finding the City’s presale occupant notice mailed to the property insufficient to apprise Turney that ad | n valorem taxes were delinquent and the consequence of nonpayment was that the property would be sold at a tax sale. In reference to the occupant notice mailed on March 4, 2010, the trial court’s opinion stated that regular mail to an occupant is not sufficient notice under Louisiana law. In making this declaration, the trial court did not cite any provision within Louisiana law on which to base its opinion.
At the time of the tax sale in question, La. R.S. 47:2153(A) stated the following:
A. On the second day after the deadline for payment of taxes each year, or as soon thereafter as possible, the tax collector shall send a written notice by United States mail postage prepaid to each tax notice party when the tax debtor has not paid all the statutory impositions which have been assessed on immovable property, notifying the person that the statutory impositions on the immovable property shall be paid within twenty days after the sending of the notice or as soon thereafter before the tax sale is scheduled, or that tax sale *508 title to the property will be sold according to law. (Emphasis added).[6]
Louisiana R.S. 47:2122(16) defines “tax notice party” as meaning, as of the date of determination, the tax debtor and any person requesting notice pursuant to La. R.S. 47:2159.[7] A “tax debtor” is the person listed on the tax roll in accordance with La. R.S. 47:2126, as of the date of determination. La. R.S. 47:2122(15). From our review of the provisions in the new Act | ^governing presale notice, Turney, who had his record owner status diminished due to the previous tax sales of the property, was never due presale notice by the City in 2010.[8]
Louisiana R.S. 47:2161(A) provides:
A. From the date of filing a tax sale certificate selling tax sale title to a tax sale purchaser, all taxes on the property shall, after that date, be assessed to and paid by the tax sale purchaser until the property, or any part, is redeemed. If redeemed, the person redeeming shall pay all statutory impositions assessed upon the property subsequent to the tax sale. The failure to assess the property in the name of the tax sale purchaser shall not affect the validity of the tax sale.
As explained in comment (c) to section 2161:
(c) The purpose of this Section is to insure that the original tax debtor does not receive a notice the next tax year after a tax sale, that only the taxes due for the tax year subsequent to the tax sale are due. This notice would not indicate that there was a tax sale for the previous year’s taxes, and those taxes remain due. Notwithstanding the fact that the property is assessed in the name of the tax sale purchaser and the tax sale purchaser will receive notice of the subsequent taxes, the tax debtor should receive a notice that there was a tax sale and of his right to redeem the property under R.S. 47:2156. (Emphasis added).
At the time the presale notices were mailed, Louisiana law required notice to be sent simply by regular mail. The tax debtor pursuant to the City’s 2009 tax roll was Husker Partners and Cody Investments and there is no evidence in the record that any other person made written request for notice pursuant to La. R.S. 47:2159. Notice was sent to the Omaha. Nebraska, address of record according to the tax roll.
11sThe trial court made a factual finding that in early 2010, Turney did not actually receive the presale occupant notice, but this factual finding was legally incorrect because the statute at the time required notice only by regular mail to the tax *509 debtor of record. Accordingly, the City complied with its statutory duties pertaining to the notice of delinquency and tax sale mandated in section 2161 and subsection 2153(A), as it provided at the time, and the trial court erred in determining otherwise.
Most importantly, we recognize that section 2153 presale notice was mailed to the tax debtor of record, Cody Investments, pursuant to section 2161; as a matter of diligence, presale occupant notice was mailed to the property; and, in accordance with section 2153, a newspaper advertisement was published to apprise all interested parties of the pending tax sale. The City complied with the new Act, but also mailed presale occupant notice by regular mail to the property at 1805 Line Avenue on March 4, 2010, three months before the tax sale. We believe this is an added precaution where there has been a sequence of delinquencies and the original tax debtor, like Turney, would not be required to receive presale notice under the law.
It is undisputed that Turney was residing at the property when the occupant notice was mailed by the City. Further, in conformity with the requirements of La. Const. Art. VII, § 25 and La. R.S. 47:2153, public notice of the tax sale of the property was published in The Shreveport Times 1 uon both May 2 and May 30, 2010.[9] Under the instant facts, we are not asked to decide if any one method of noticing, alone, achieves constitutional sufficiency for due process. Instead, we must decide if the aggregate, diligent efforts by both the City and tax sale purchaser, Adair, were reasonably calculated under all circumstances to apprise Turney of the pending tax sale and allow him an opportunity to protect his interest.
Moreover, regardless of the trial court’s determination concerning the occupant notice, pursuant to the new Act, as indicated here by section 2161 and as will be shown below, a presale notice is no longer the important notice. Under the new Act, a tax sale can no longer be found null for problems with presale notice.

Post-Sale Redemption Notice

Adair also maintains that the trial court erred by failing to consider the post-sale redemption notice, which Turney received through certified mail in accordance with La. R.S. 47:2156. The trial court noted in its opinion that “this court knows of no ‘curing5 of the notice requirements when the purchaser at a tax sale sends a letter to the owner of the property. Said mailing of notice two years after the tax sale cannot cure the lack of notice for presale.”
| ifiAfter the 2008 revision, we find that post-sale notice is now the important notice for due process, and due process is met as long as a person is duly notified. Louisiana R.S. 47:2122(4) defines “duly notified” as:
[W]ith respect to a particular person, that an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266, regardless of any of the following:
*510 (a) Whether the effort resulted in actual notice to the person.
(b) Whether the one who made the effort was a public official or a private party.
(c) When, after the tax sale, the effort was made.
Louisiana R.S. 47:2156 provides the procedure for post-sale notice of the right to redeem:
A. Within the applicable redemptive period, the tax sale purchaser may send a written notice to any or all tax sale parties notifying the parties of the sale. The notice shall provide full and accurate information necessary to contact the tax sale purchaser, including the name, physical address, and telephone number of the purchaser. It shall be accompanied by a copy of the tax sale certifícate received by the tax sale purchaser under the provisions of this Part and copies of the documents that the purchaser received with that sale. The notice shall inform the tax sale parties that the failure to redeem the property prior to the expiration of the applicable redemptive period will terminate the right to redeem the property, and the purchaser will have the right to seek confirmation of the tax title and take actual possession of the property. The notice shall be sufficient if it is in the form set forth in Subsection B of this Section. (Emphasis added).
B, (1) For each property for which tax sale title was sold at tax sale to a tax sale purchaser, each collector shall within thirty days of the filing of the tax sale certificate, or as soon as practical thereafter, provide written notice to the following persons that tax sale title to the property has been sold at tax sale. The notice shall be sent by postage prepaid United States mail to each tax notice party and each tax sale party 11fiwhose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the tax sale certificate. (Emphasis added).
* * *
Section 2156 further provides that all notices following the form .contained within subsection (B)(3) shall be considered sufficient.
Under the new Act, subsection 2122(4) clearly provides that due process notification can occur in one of several methods: “under La. R.S. 47:2156, 2157, 2206, 2236, or 2275, or with service of a petition and citation in accordance with R.S. 47:2266.” The redemption notice under section 2156 is just one of the ways to achieve due process notification of the requisite parties. When section 2156, post-sale notice is given by the tax sale purchaser, it is required to be sent to each tax notice party and each tax sale party.[10] “Tax sale party” includes the tax notice party, the owner of property, (including the owner of record at the time of a tax sale, as shown in the conveyance records of the appropriate parish), and any other person holding an interest, (such as a mortgage, privilege, or other encumbrance on the property, including a tax sale purchaser, as shown in the mortgage and conveyance records of the appropriate parish). La. R.S. 47:2122(19).
*511 According to the City Finance Department/ Revenue Division records, on June 21, 2010, letters were mailed via regular mail to property owners notifying them that their property was sold at tax sale and |17adj udicated with information expressing their rights and time to redeem. It is unclear from the record which parties were sent post-sale notice by the City. According to subsection 2122(4), it does not matter who sends the notice, public official or private party, and according to subsection 2122(12), it does not matter how the notice is sent, regular or certified mail. Therefore, any deficiency in the notices sent by the City was, in effect,- “cured” by the notices sent by Adair'.
Louisiana R.S. 47:2156 supplies tax sale purchasers with the option to safeguard their purchase from nullity by allowing them to send post-sale notice of the right to redeem to interested parties, at least six months before the expiration of the redemption period. On September 5, 2012, nine months before the end of the three-year redemption period, Adair mailed notices by certified mail, return receipt requested, to the following parties:
• Michael Harris Turney, 733 Olive Street, Shreveport, LA 71104 — Owner;
• Michael Harris Turney, 1805 Line Ave, Shreveport, LA 71101-4611— Owner;
• Bank One, N.A., d/b/a JP Morgan Chase & Co., Second Floor/ Legal Department, 4915 Independence Parkway, Tampa, FL 33634 — Mortgagee;
• Bank One,- N.A., d/b/a JP Morgan Chase & Co., Through its Registered Agent, C T Corporation, 208 SO La Salle Street, Suite 814, Chicago, IL 60604 — Mortgagee;
• Bank One, N.A., d/b/a JP Morgan Chase & Co., Through its Registered Agént, C T Corporation System, 111 Eighth Avenue, 13th Floor, New York, N.Y; 10017 — Mortgagee;
• Bank One, N.A., d/b/a JP Morgan Chase & Co., Attn: Customer Care Research, Mail Code: OH 4-7302, P.O. Box 24696, Golumbus, OH 43224-0696 — Mortgagee;
| is» Bank One, N.A., 100 East Broad Street, Columbus, OH 43271 — Mortgagee; ' ■
• AmSouth Bank d/b/a Regions Bank, P.O. Box 11007, Birmingham, AL 35288 — Mortgagee;
• AmSouth Bank d/b/a Regions Bank, 1900 Fifth Avenue North, Birmingham, AL 35203 — Mortgagee;
• AmSouth Bank d/b/a Regions Bank, 320 -Somerulos Street, Baton Rouge, - LA 70802 — Mortgagee;
• AmSouth Bank d/b/a Regions Bank, Through its Registered Agent, Corporation Service Company, 320 Som-eriilos Street, Baton Rouge, LA 70802-6129 — Mortgagee;
• AmSouth Bank d/b/a Regions Bank, Through its Treasurer, David J. Turner, Jr., 1900 Fifth Avenue North, Birmingham, AL 35203 — Mortgagee;
• G. j. Tax Sale Properties, LLC, Post Office. Box 850001, Orlando FL 32885 — Tax Sale Purchaser;
• G.J. Tax Sale Properties, LLC, 4905-B Poplar Springs Drive, Meridian, MS 39305 — Tax Sale Purchaser;
• G.J.. Tax Sale t Properties, LLC, Through its Registered Agent, Bob Smith,- 2623 Myrtlewood Drive, Meridian, MS 39307 — Tax Sale Purchaser;
• G.Ji Tax Sale Properties, LLC, Through its Registered Agent, Bob Smith, P.O. Box 8293,- Meridian, MS 39303 — Tax Sale Purchaser;
*512 • Cody Investments, LLC, Through its Registered Agent, Dianne F. Harvill, 195 North Beach Drive, Bossier City, LA 71111 — Tax Sale Purchaser; and,
• Cody Investments, LLC, 1854 Linton Rd, Benton, LA 71006 — Tax Sale Purchaser.
At trial, the returned green card receipts for all of the above parties were entered into evidence without objection. The only letter returned undeliverable was the letter addressed to Turney at the Olive Street address.
|19Turney testified at trial that he traveled out of town often for work, and while away, his employees normally collect his mail and forward it to him. It is undisputed that Lisa Cade was ■ an employee of Turney at the time she signed for the redemption letter that was mailed to Tur-ney at 1805 Line Avenue; thus Turney received the requisite notice. Post-sale notice is now the important notice for due process in tax sales and redemption. Adair followed the directive of section 2156 by ensuring all tax sale parties received sufficient notice more than six months before the end of the redemption period. Considering the foregoing, we find that the trial court erred in holding Turney was not adequately apprised of his right to redeem the property before the period of redemption passed.

The Abandonment of Absolute Nullities

In another assignment of error, Adair argues the trial court erred by finding the 2010 tax sale null and of no effect. Adair maintains that Turney failed to meet his burden of proving the tax sale null under one of the three exclusive relative nullity causes for provided in the new Act. According to Adair, the trial court gave no consideration to the revision in the law which abandoned application of absolute nullities in tax sales. We agree.
It is clear from the plain language of the statute itself that any of the three exclusive nullity causes are relative nullities capable of being cured. La. R.S. 47:2286. Further, the Official Revision Comments for La. R.S. 47:2286 make clear the express purpose of the legislature:
(a) This Section is new. It modifies the law in part.
(b) In keeping with the emphasis of the revision, the important notice is a notice of the right to redeem. | gpTherefore, the only reason a tax sale can be set aside or declared a nullity is for a redemption nullity, a payment nullity, or a sale to a prohibited person under R.S. 47:2162. A tax sale can no longer be set aside for minor procedural violations in noticing the tax sale and in the conduct of the tax sale, etc.
(c) This Section makes clear that all of these nullities are relative nullities since the nullities can be cured. A claim of a redemption nullity can be cured by the giving of notice and the passage of time under this Chapter. A claim of a payment nullity can be cured by acquisitive prescription. A violation of R.S. 47:2162 is cured by a sale to a good faith purchaser. An action for nullity under this Chapter is also subject to liberative prescription. See 47:2287. The action may be brought only by a tax sale party whose interest in the property has been adversely affected. (Emphasis added).
[[Image here]]
We note that the former law provided that failure to give presale notice to any tax sale party would render the sale an absolute nullity. An absolute nullity exists when there is a violation of a rule of public order, is incapable of confirmation, imprescriptible, and may be invoked by any person or declared by the court on its own initiative. La. C.C. art. 2030. An *513 absolute nullity cannot be cured by any means. The possibility that a tax sale could be invalidated at any time as an absolute nullity under the old tax sale regime created a system of persistent uncertainty. It was undoubtedly the aim of the Louisiana Legislature to correct this confusion and create a regime that reconciles the requirements of due process under Mennonite, with a system that both provides a fair process for the redemption of tax sale properties and encourages the return to commerce of such properties subject to tax sale. La. R.S. 47:2121; La. R.S. 47:2286.
1 ⅞1 There now exist only three exclusive causes that render a tax sale a relative nullity: redemption nullity (La. R.S. 47:2122), payment nullity (La. R.S. 47:2122), or sale to a prohibited buyer (La. R.S. 47:2162). Unlike an absolute nullity, a relative nullity can be cured. La. C.C. art. 2031. Prohibited buyers under section 2162 include the tax collector or tax assessor for the political subdivision, or any other person acting on behalf of the political subdivision whose duties are to assess or collect ad valorem taxes for the political subdivision. A. payment nullity arises from payment of taxes prior to a tax sale, including payment based on dual assessment. La. R.S. 47:2121(8). There is nothing to evidence that Adair is acting on behalf of a political subdivision and it is undisputed that Turney did not pay the taxes previous to the 2010 tax sale. Therefore, the only available cause to find this tax sale null is for a redemption nullity-
A redemption nullity is the right of a person to annul a tax sale in accordance with La. R.S. 47:2286, because he was not duly notified at least six months before the termination of the redemptive period. La. R.S. 47:2122(10). As previously discussed, a person is “duly notified” when effort is made to identify and provide that person with notice in accordance with the law, regardless of whether actual notice results, who gives the notice, or when the notice is sent; as long as notice is sent at least six months before the redemption period expires. La. R.S. 47:2122(4); La R.S. 47:2156. Adair mailed .redemption notices to all tax sale parties, in the form specified by La. R.S. 47:2156(B)(3), more than six months prior to the expiration of the redemption period. Turney cannot meet the burden toj^prove a redemption nullity under these facts; therefore, the trial court erred in'finding the tax salé null and of no effect.

Constitutionality and-Mennonite

The trial court ruled that Turnéy did not receive actual presale notice. In accordance with this finding, the trial court stated that due process of law under Mennonite had been violated, but it failed to apply Louisiana law as it existed at the time the 2010 tax sale took place. Until the constitutionality of the new Act governing tax sales and redemption is specifically challenged, the legislative revision of the law is presumed constitutional, and any doubt is to be resolved in the new Act’s favor. State v. Tucker, supra; Polk, supra. The trial court’s reliance on Mennonite did not amount to a finding that these statutes are per se unconstitutional.
Regarding the deprivation of property rights, the new Act provides that “a tax sale confers on the tax sale purchaser ... only tax sale title.” La. R;S. 47:2121(C). That “tax sale title” as defined by the statute “means the set of rights acquired by a tax sale purchaser ... pursuant to this Chapter.” La. R.S. 47:2122(22). The set of rights of the tax sale purchaser entails the newly enacted rights for notification to the tax sale parties. concerning the key concept of redemption. Therefore, “tax sale title” does, not confer ownership on the tax sale purchaser or divest ownership of the tax sale debtor until a proper *514 post-tax sale notice is issued and the redemption period expires in accordance with'the law.
The Louisiana Legislature has expressly declared that’the important notice is the notice received six months before the end of the three-year | ^redemption period. La. R.S. 47:2286, Comment (c); La. R.S. 47:2156. Under the new Act, it does not matter whether a tax debtor, mortgagee, or other tax notice party receives notice from the tax collector or the tax purchaser. La. R.S, 47:2122(4). If the post-sale notice of the right to redeem is received by the tax sale parties more than six months before the end of the redemption period, due process, is satisfied. La. R.S. 47:2156. The important post-sale redemption notice was sent by Adair and received by Turney more than six months before the end of the redemption period; therefore, due process has been satisfied, and the trial court erred in finding that Turney’s constitutional right to due process had been violated.
CONCLUSION
For. the foregoing reasons, the judgment of the trial court in favor defendant, Michael Harris Turney, finding the tax. sale null and void is reversed, and the award of reimbursement is vacated. We enter a judgment to quiet and confirm the tax sale title held by Adair Asset. Management, LLC. Costs of this appeal are assessed to appellee, Michael H. Turney.
REVERSED AND JUDGMENT ENTERED IN FAVOR OF ADAIR ASSET MANAGEMENT, LLC.
APPLICATION FOR REHEARING
Before CARAWAY, MOORE and LOLLEY, JJ.
Rehearing denied.

. When Turney purchased the property from the Longs it was encumbered by a mortgage in favor of Bank One, N.A.

. At the time of the 2010 City tax sale at issue, there is no evidence in the record to show that Regions Bank no longer held a mortgage on the property or that the loan' had been repaid by Turney,

.Another taxing district may have conducted a separate tax sale in 2010, explaining why Husker Partners was also listed as an assessed owner. See La. R.S. 47:2160.

. After the 2010 City tax sale, in which Adair acquired the tax sale certificate for the property, it presumably paid all subsequent ad valorem taxes.

. Over six months after the filing of the peti- ' tion to quiet title, and because no action was taken by defendants, Regions Bank and Cody Investments, Adair filed a motion for preliminary default. This motion was pending at the time of trial. See La. R.S. 47:2266.

. Louisiana R.S. 47:2153 was subsequently amended, effective August 15, 2010, to change the requirement from "United States mail postage prepaid” to "certified mail, return receipt requested.”

. Louisiana R.S. 47:2153 utilizes the narrow term "tax notice party,” which includes only the tax debtor of record per the tax roll for the year implicated and anyone specifically requesting in writing that all notices sent to the tax debtor also be sent to the requesting party. In contrast, La. R.S. 47:2156, governing post-sale notice, employs the broader, more encompassing term; "tax sale party.” La. R.S. 47:2122(19). Thus, the legislature intended for post-sale notice to be the important notice received by all parties with an interest in the property subject to tax sale proceedings.

.Section 2126 was added during the 2008 revision. "Further, the tax roll is to list a tax sale purchaser as an owner.” La. R.S. 47:2126, Comment (a). This does not confer ownership of the property on a tax sale purchaser. See La. R.S. 47:2121(C); La. R.S. 47:2122(22); La. R.S. 47:2161.

. It is clear that notice of a tax sale published in a newspaper is insufficient to comply with due process requirements. Cititax Grp., L.L.C. v. Gibert, 2012-0633 (La.App. 4th Cir.12/19/12), 108 So.3d 229, 233; see Lewis v. Succession of Johnson, 2005-1192 (La.04/04/06), 925 So.2d 1172. The Lewis court noted the notice of the tax delinquency by publication of an advertisement for an upcoming tax sale, alone, does not pass constitutional muster if the owners of the property can be identified or are easily discovered.

. To "send” means to deposit in the mail or deliver for transmission by. any other commercially reasonable means of communication with postage or cost of transmission provided for, and properly addressed to any address reasonable under the circumstances, or in any other way to cause to be received any written notice within the time it would have arrived if properly sent. La. R.S. 47:2122(12).