**CENTRAL PROPERTIES**

v.

**FAIRWAY GARDENHOMES, LLC, et al**

**Husker Partners/US Bank d/b/a Husker Partners**

v.

**Fairway Gardenhomes, LLC, et al**

**Husker Partners/US Bank d/b/a Husker Partners**

v.

**Fairway Gardenhomes, LLC, et al**

NO. 2016 CA 0111
NO. 2016 CA 0112
NO. 2016 CA 0113

Court of Appeal of Louisiana,
First Circuit.

September 16, 2016

Melissa T. Castille, Vy Van Ky, Baton Rouge, LA, Thomas M. Flanagan, Andy Dupre, Camille E. Gauthier, New Orleans, LA, Attorneys for Plaintiffs-Appellants, Central Properties and Husker Partners

E. B. Dittmer, II, Mandeville, LA, Attorney for Defendant-Appellee-2nd Appellant, Resource Bank

BEFORE: HIGGINBOTHAM, THERIOT, AND CHUTZ, JJ.

HIGGINBOTHAM, J.

These consolidated matters arose out of three actions to quiet title on property. The actions were brought by tax sale purchasers holding tax sale certificates acquired during the 2010 St. Tammany Parish tax sale. The district court ultimately ruled that insufficient notice had been given to a mortgagee, and dismissed the actions to quiet title. This appeal concerns what tax sale notice is constitutionally required to be given a mortgagee pursuant to the 2008 comprehensively revised law that relates to the payment and collection of property taxes, tax sales, and redemptions.

## FACTS AND PROCEDURAL HISTORY

The subject properties include three separate condominiums, units 13, 14, and 15, owned by Fairway Gardenhomes, LLC (Fairway), and located in Covington, Louisiana. In January 2009, the mortgagee, Resource Bank, granted a loan to Laporte Family Properties, LLC (Laporte), which was secured by a multiple indebtedness mortgage covering the subject properties. The mortgage was recorded in the St. Tammany Parish public records on January 9, 2009.

In 2009, Fairway failed to pay the *ad valorem* taxes that were due on the subject properties. As a result of the tax delinquency, a tax sale was conducted by the Sheriff and Ex-Officio Tax Collector for St. Tammany Parish (the tax collector) on June 23, 2010. The subject properties were sold to tax sale purchasers, Central Properties (Central) and Husker Partners/U.S. Bank, d/b/a Husker Partners (Husker), for the amount of taxes, interest, and costs due on each condominium unit.[1] Individual tax sale certificates were issued to Central for unit 14, and Husker for units 13 and 15.

The tax sale certificates were each recorded in the St. Tammany Parish public records on July 8, 2010, explicitly stating that the owner, Fairway, had three years from the date of recordation, or until July 8, 2013, to redeem the subject properties. The tax sale certificates were silent, however, as to the mortgagee's, Resource Bank's, interests in the subject properties. The tax collector apparently mailed pre-sale and post-sale notices to Fairway, but those notices were returned unclaimed.[2] Conversely, the record reflects that the tax

---

1. The total amount due for unit 13 was $2,642.38, and for units 14 and 15, the total amounts due were $2,447.60 each.

2. None of the claims involving Fairway or Laporte's interests are at issue in this appeal.

collector did not actually send *any* pre-sale or post-sale notices to Resource Bank.

A little over two years after the tax sales, on October 25, 2012, through certified and regular First Class mail, the tax sale purchasers, Central and Husker, mailed multiple notices of the right to redeem the tax sales of the subject properties to Fairway, Laporte, and Resource Bank.[3] These are the key post-sale notices relied on by Central and Husker that they insist cured any pre-sale notice problems. It is undisputed that Fairway and Laporte each received Central and Husker's certified mail notices of the right to redeem through their registered agent for service of process, Leroy J. Laporte, Jr., on October 29, 2012. However, even though return receipts for Resource Bank's right to redeem notices were signed by someone with the initials "JL" on October 27, 2012, and the notices were mailed to Resource Bank's main office address as noted on the recorded mortgage documents, Resource Bank disputes receipt of the notices. Resource Bank also denies that there was any employee working at Resource Bank in 2012 who had the initials of JL.

None of the subject properties were timely redeemed by the July 8, 2013 deadline for redemption. Consequently, on December 18, 2013, Central and Husker filed three separate petitions to quiet their tax titles on the subject properties. In each of the three lawsuits, which were later consolidated for trial. Central and Husker alleged that Fairway, Laporte, and Resource Bank were all duly notified of their statutory rights to redeem the subject properties more than six months prior to the expiration of the three-year redemptive period. Resource Bank timely answered the petitions and filed reconventional demands against Central and Husk-

er, seeking to invalidate the tax sale certificates as absolute nullities due to the undisputed lack of pre-sale notices, as well as insufficient/unreasonable post-sale notices of its right to redeem. Resource Bank further alleged that, to the extent the 2008 revision to the law governing tax sale notices may have limited its right to annul the sales for lack of pre-sale notice, the law was unconstitutional.

A bench trial was held on July 1, 2015, at which time all evidence was admitted without objection and the parties entered certain stipulations, including that: (1) the subject properties had not been timely redeemed, (2) Resource Bank made no formal statutory request for notice, and (3) no pre-sale notice of either the tax delinquencies or tax sales was given to Resource Bank. After taking the matter under advisement, the district court issued written reasons concluding that Central and Husker's post-sale notices of the right to redeem mailed to Resource Bank were insufficient. The district court seemingly focused on the credibility of Resource Bank's vice president's testimony that there was no record of the notices ever being received by Resource Bank. The district court made no ruling as to the constitutionality of the 2008 revision as it related to the lack of pre-sale notification to Resource Bank. Consequently, in a judgment signed on August 17, 2015, the district court simply denied Central and Husker's petitions to quiet tax title, and allowed Resource Bank thirty days to redeem the subject properties.

Central and Husker suspensively appealed, maintaining that the district court legally erred when it focused on whether Resource Bank actually received the post-sale notices of the right to redeem. Re-

---

**3.** The right to redeem notices were also mailed to an additional mortgagee, Central Progressive Bank, whose interests are not at issue in this appeal.

source Bank answered the appeal, challenging the district court's failure to grant its reconventional demands seeking to annul the [₅tax sales, since it was undisputed that Resource Bank was not given any pre-sale notice. Further, Resource Bank argues that Central and Husker's efforts to provide post-sale notice of Resource Bank's right to redeem were unreasonable/insufficient. Central and Husker insist, however, that under the 2008 statutory revision, which became effective January 1, 2009, all problems with pre-sale notice requirements are cured by the sending of post-sale redemption notices. Resource Bank counters that if the 2008 revision is interpreted to have basically eliminated pre-sale notice requirements for mortgagees, the revision violates due process of law. Resource Bank further argues that post-sale notice of the right to redeem does not cure the lack of pre-sale notice.

Upon receipt of the record, this court, *ex proprio motu*, issued a rule to show cause why the appeal should not be dismissed, because the district court's judgment appeared to lack appropriate decretal language and the judgment further appeared to be conditional in that it was unclear whether any party had been dismissed. The matter was remanded to the district court for the limited purpose of allowing the district court to sign an amended judgment and supplement the appellate record with the amended judgment. Pursuant to this court's order and by consent, the parties jointly submitted a proposed judgment that addressed the deficiencies outlined by this court. The district court signed an amended judgment on March 9, 2016, designated it as a partial final judgment with no just reason for delaying the appeal, vacated the previous August 17, 2015 judgment, and ordered that the record on appeal be supplemented with the amended judgment.

After supplementation of the appellate record, another panel of this court maintained the appeal, but reserved a final determination to this panel, which was assigned to hear the merits of the appeal. Accordingly, we have reviewed the amended judgment and considered whether the district court's designation of "no [₆just reason" to delay the appeal was proper according to the factors listed in **R.J. Messinger, Inc. v. Rosenblum**, 2004–1664 (La. 3/2/05), 894 So.2d 1113, 1122–23. We have determined that the amended judgment contains the appropriate decretal language to be considered a partial final judgment, since all of the claims of Central and Husker against Resource Bank were dismissed, and Resource Bank's reconventional demands against Central and Husker were dismissed as moot. Further, because the judgment affects interests in real property, we find it is in the interest of all the parties to have the issues decided promptly even though Central and Husker's claims against Fairway and Laporte have not yet been dismissed. Appeals are favored in the law, and doubts should be resolved in favor of maintaining appeals. Thus, we will maintain this appeal, and now consider the merits of these consolidated actions to quiet tax title.

## LAW AND ANALYSIS

■ By means of 2008 La. Acts, No. 819, effective January 1, 2009, the Louisiana Legislature comprehensively amended, restated, and organized the law governing the payment and collection of property taxes, tax sales, and adjudicated property. Act 819 re-enacted Chapter 5 of Subtitle III of Title 47 of the Louisiana Revised Statutes. Some of the stated purposes of Act 819, also known as the 2008 revision, were to encourage the payment and efficient collection of property taxes, satisfy the requirements of due process, provide a

fair process for the redemption of tax sale property, and encourage the return of such properties to commerce. La. R.S. 47:2121(A). Since the 2008 revision, the law has been amended several times, most significantly by 2012 La. Acts, No. 836, which was effective August 1, 2012. But because the tax sales at issue took place on June 23, 2010, we will focus on the language of the 2008 revision as found in the statutes that were in effect at the time of the tax sales.

▮ ⌊₇When interpreting statutes, the paramount concern is determining legislative intent by ascertaining the reason that triggered the enactment of the law. See **Anderson v. Ochsner Health System**, 2013–2970 (La. 7/1/14), 172 So.3d 579, 581. The function of statutory interpretation and the construction given to legislative acts rests with the judiciary. **Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development**, 2010–0193 (La. 1/19/11), 56 So.3d 181, 187. Statutes are generally presumed constitutional, and any doubt is to be resolved in the statute's favor. **State v. Palermo**, 2000–2488 (La. 5/31/02), 818 So.2d 745, 749. However, when a statute conflicts with a constitutional provision, the statute must fall. **Fransen v. City of New Orleans**, 2008–0076 (La. 7/1/08), 988 So.2d 225, 234.

▮ The interpretation of any statutory provision starts with the language of the statute itself. **Oubre v. La. Citizens Fair Plan**, 2011–0097 (La. 12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, the language must be given effect, and the provision must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ. Code art. 9; La. R.S. 1:4. Additionally, it is important to keep in mind that, while the

Official Revision Comments connected with statutes are not the law, they may be helpful in determining legislative intent. **Arabie v. CITGO Petroleum Corp.**, 2010–2605 (La. 3/13/12), 89 So.3d 307, 312.

▮ The Fourteenth Amendment to the United States Constitution and Article 1, Section 2, of the Louisiana Constitution guarantee due process of law before the deprivation of life, liberty, or property. It is well settled that, prior to instituting an action which will affect an interest in property, a state must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." **Mullane v. Central Hanover Bank & Trust Co.**, 339 U.S. 306, 314, 70 S.Ct. 652, ⌊₈657, 94 L.Ed. 865 (1950); see also **Mennonite Bd. of Missions v. Adams**, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983); **Smitko v. Gulf South Shrimp, Inc.**, 2011–2566 (La. 7/2/12), 94 So.3d 750, 755–56; **Tietjen v. City of Shreveport**, 2009–2116 (La. 5/11/10), 36 So.3d 192, 194–95; **Hamilton v. Royal Intern. Petroleum Corp.**, 2005–846 (La. 2/22/06), 934 So.2d 25, 30, cert. denied, 549 U.S. 1112, 127 S.Ct. 937, 166 L.Ed.2d 704 (2007). The sale of property for nonpayment of taxes is an action affecting an interest in property. See **Mennonite**, 462 U.S. at 800, 103 S.Ct. at 2712. Further, it is well settled that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale[,]" and therefore is entitled to notice reasonably calculated to apprise of a pending tax sale. **Id.**, 462 U.S. at 798, 103 S.Ct. at 2711. See also **Smitko**, 94 So.3d at 756.

The Louisiana Constitution, Article 7, Section 25(A)(1), requires a tax collector to provide notice of tax delinquencies in the

manner provided by law.[4] At the time of the tax sales at issue, on June 23, 2010, the legislature had set forth a comprehensively revised manner (the 2008 revision) by which notices of delinquencies in immovable property taxes must be provided in compliance with La. Const. art. 7, § 25. Louisiana Revised Statute 47:2153 consolidated and generally reproduced the substance of former La. R.S. 47:2180, 47:2180.1, and 47:2181, with certain modifications that included combining the notice of delinquency and the notice of tax sale into a single notice and a single publication. In June 2010, La. R.S. 47:2153, entitled "Notice of delinquency and tax sale," provided in pertinent part:

A. On the second day after the deadline for payment of taxes each year, or as soon thereafter as possible, **the tax collector shall send a written notice** by United States mail postage prepaid **to each tax notice party** when the tax debtor has not paid all the statutory impositions which have been assessed on immovable property, **notifying** the person that the statutory impositions on the immovable property **shall be paid within twenty days** after the sending of the notice or as soon thereafter before the tax sale is scheduled, **or that tax sale title to the property will be sold** according to law. [Emphasis added.]

4. Louisiana Constitution Article 7, Section 25(A)(1), entitled "Tax Sales," provides in pertinent part:

There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and **after giving notice to the delinquent in the manner provided by law**, shall advertise for sale the property on which the taxes are due. ... A tax deed by a tax collector shall be

A "tax notice party" is defined in La. R.S. 47:2122(16) as the tax debtor and any person requesting notice pursuant to La. R.S. 47:2159, which provides that any person may request that all notices that are sent to a tax debtor also be sent to the requesting person. According to La. R.S. 47:2159, "[a] mortgage holder who has requested notice and paid the fee shall receive notices until such time that the tax collector receives notice of the cancellation of the mortgage inscription." It is undisputed that the mortgagee in this case, Resource Bank, did not request that it receive all notices that were sent to the tax debtor. However, jurisprudence of this state is clear that a tax sale conducted without prior notice of the tax delinquency to a mortgagee of record violates the mortgagee's due process rights and the tax sale is absolutely null. See **Smitko**, 94 So.3d at 756. Jurisprudence has further held that the mortgagee does not waive its right to prior notice of delinquency by failing to request notice of the delinquency. See **Bank of West Baton Rouge v. Stewart**, 2000–0114 (La.App. 1 Cir. 2/16/01), 808 So.2d 464, 466; **Padilla v. Schwartz**, 2006–1517 (La.App. 4th Cir. 3/11/09), 11 So.3d 6, 15.

Central and Husker insist that under the 2008 revision, the important notice is now the post-sale notice of the right to redeem, which they sent to Resource Bank by certified mail and regular First Class mail, thereby allegedly curing any deficiency in the pre-sale notices.[5] Central and

prima facie evidence that a valid sale was made. [Emphasis added.]

5. Central and Husker rely on a recent Second Circuit Court of Appeal case, **Adair Asset Management, LLC v. Turney**, 50, 574 (La. App. 2d Cir. 5/4/16), 195 So.3d 501, 505–06, holding that post-sale notice is the important notice for due process, and that constitutional due process is met as long as a person is duly notified of the right to redeem, thereby curing any lack of pre-sale notice. We have reviewed

Husker also contend that the 2008 revision, in La. R.S. 47:2286, actually restricts the ability to nullify tax sales if tax sale parties are duly notified of the redemptive period after the tax sale, and a "tax sale party" has always included a mortgagee as identified in the public records. See La. R.S. 47:2122(19). Central and Husker specifically rely on the language found in 2008 Official Revision Comment (b) for La. R.S. 47:2286, stating that "the important notice is a notice of the right to redeem. ... A tax sale can no longer be set aside for *minor* procedural violations in noticing the tax sale and in the conduct of the tax sale, etc." [Emphasis added.] Even if we accepted Central and Husker's argument, there remains a significant issue to be determined: whether the lack of pre-sale notice to a mortgagee of record is a "minor" procedural violation in noticing the tax sale.[6]

Adair Asset Management, and find it factually distinguishable from the case *sub judice* since our ultimate ruling herein does not turn on the lack of pre-sale notice to the tax debtor as in that case. Rather, we are faced with a situation where a mortgagee of record was not sent a mandatory post-sale notice by the tax collector. The mandatory post-sale notice by the tax collector to the mortgagee in **Adair Asset Management** was not at issue, and the court in fact noted that it was "unclear from the record which parties were sent post-sale notice" by the tax collector. **Id.**, 195 So.3d at 506.

6. We note there is support for discounting Central and Husker's argument, not only in the jurisprudence, but in the language that was later added to the notice of delinquency and tax sale statute, La. R.S. 47:2153, by La. Acts 2012, No. 836, § 1, effective August 1, 2012, providing as follows:

A.(2)(a) No later than the first Monday of March of each year, or as soon thereafter as possible, **the tax collector shall search the mortgage and conveyance records of tax sale eligible property to identify its tax sale parties.**
(b) *Prior to the tax sale, the tax collector shall send a written notice* by **certified mail, return receipt requested,** *to each tax*

However, that is a question that we must reserve for another day, along with consideration of the constitutionality of the 2008 revision that does not mandate pre-sale notice of the tax sale to mortgagees, because we find that the tax sales in this case must be set aside for another reason. Louisiana Revised Statute 47:2156, entitled "Post-sale notice," requires *mandatory* post-sale notice to be sent *by the tax collector* to any mortgagees identified in the public records, as long as the mortgagee's interest was filed prior to the filing of the tax sale certificates. The applicable version of La. R.S. 47:2156, effective at the time of the June 23, 2010 tax sales at issue, provides in pertinent part:

A. Within the applicable redemptive period, **the tax sale purchaser *may* send a written notice to any or all tax sale parties** notifying the parties of the sale. ...

*sale party* identified pursuant to Subparagraph (a) of this Paragraph. The notice shall advise the person that it is required that the statutory impositions on the immovable property be paid within twenty days after the sending of the notice or the tax sale title to the property will be sold according to law. ...
C.(1) In the absence of *actual notice* of the sale to a tax sale party, including a transferee, or the demonstration of a reasonable effort to provide notice, where the name and address of the tax sale party were reasonably ascertainable or where the transfer was recorded after the tax collector completed his pre-sale tax sale party research, the tax collector *shall cancel the sale* of the property and refund the tax sale purchaser the tax sale purchase price. [Emphasis added.]
Although this language was added by the legislature after the tax sales at issue, the 2012 revision evidences a clear legislative recognition that, should a tax collector fail to provide a tax sale party with *actual pre-sale notice* of the tax sale, the tax collector must cancel the sale and refund the tax sale purchaser.

B. **For each property for which tax sale title was sold at tax sale** to a tax sale purchaser:

    (1) If the redemptive period is greater than two years, **each January** or as soon as practical thereafter, **each *tax collector shall* send a written notice by United States mail, postage prepaid, to each tax notice party and *each tax sale party* whose interest would be shown on a thirty-year mortgage certificate** in the name of the tax debtor and whose interest was filed prior to the filing of the tax sale certificate **that tax sale title to the property has been sold at tax sale.**

* * *

    (2) The notice shall be given until the end of the applicable redemptive period. . . . [Emphasis added.]

The record reflects that Resource Bank's mortgage interest concerning the subject properties was recorded in the St. Tammany Parish public records on January 9, 2009, well before the tax sale certificates evidencing each of the tax sales of the subject properties were recorded in the St. Tammany Parish public records on July 8, 2010. The record is void of any evidence that the tax collector mailed or even attempted to mail the *mandatory* post-sale written notice of the tax sales to Resource Bank, a tax sale party whose interest was clearly shown in the public records at the time of the tax sales. Because the tax collector failed to provide the mandatory post-sale notices to Resource Bank, we find that Resource Bank has a valid ground to have the tax sales nullified based on that omission. See La. R.S. 47:2286 ("[n]o tax [12sale shall be set aside except for a . . . redemption nullity . . . [and] the action may be brought as a re-conventional demand . . . in an action to quiet title . . .").

A "redemption nullity" under the 2008 revision means the right to annul a tax sale as a result of not being "duly notified." See La. R.S. 47:2122(10). "Duly notified" is defined at La. R.S. 47:2122(4), and means that:

> *an effort meeting the requirements of due process of law* has been made to identify and to provide . . . notice that meets the requirements of [La.] R.S. 47:2156, . . . regardless of . . . [w]hether the effort resulted in actual notice to the person[,] [w]hether the one who made the effort was a public official or a private party[,] . . . [or] [w]hen, after the tax sale, the effort was made. [Emphasis added.]

In this case, Resource Bank was not "duly notified" by the tax collector as mandated by the 2008 revisions to the law. For that reason, we find that the tax sales at issue are null, because the mortgagee was not afforded its right to due process. This ruling is supported by one of the stated purposes of the 2008 revision to "[s]atisfy the requirements of due process." See La. R.S. 47:2121(A)(3).

Furthermore, to the extent that Central and Husker rely on language in 2008 Official Revision Comment (f) for La. R.S. 47:2156, stating that "the failure to give the notices provided in this Section do not give rise to an action based on a redemption nullity," we reiterate that Official Revision Comments concerning statutes are not the law. See **Arabie**, 89 So.3d at 312. The law is found in the statute itself, which explicitly requires the tax collector to send post-sale notice of every tax sale title sold at tax sale to each mortgagee whose interest is identified in the public records. Since this was undisputedly not done in this case, we must conclude that the tax sales of the subject properties are null.

We further find that our ruling concerning the consequences for want of due process because of the lack of *mandatory* post-sale notice by the tax collector to Resource Bank negates any need to consider whether the district court manifestly erred in concluding that the *optional* post-sale notices sent by Central and Husker to Resource Bank were insufficient and unreasonable.[7] In our view, however, the optional post-sale notices sent by the tax sale purchasers cannot remedy the complete lack of the tax collector's mandatory post-sale notice to Resource Bank in this instance.[8] Thus, we find that the issue of whether the district court correctly ruled on the reasonableness of the optional post-sale notices is moot. An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic," and can serve no useful purpose or give practical relief or effect. **In re E.W.**, 2009–1589 (La.App. 1 Cir. 5/7/10), 38 So.3d 1033, 1037. It is well settled that courts are not required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. **Id.**

## CONCLUSION

After determining that this appeal should be maintained, we affirm the district court's judgment dismissing Central and Husker's petitions to quiet tax title on the subject properties, albeit for different reasons than assigned by the district court. Additionally, we find that the district court erred in dismissing Resource Bank's reconventional demands seeking to set aside the tax sales on the subject properties for lack of notice. Thus, we reverse the dismissal of Resource Bank's reconventional demands against Central and Husker, and we render judgment declaring that the June 23, 2010 tax sales of the subject properties are null and void for want of due process. All costs of these consolidated appeals are to be paid by Central Properties and Husker Partners/U.S. Bank, d/b/a Husker Partners.

## APPEAL MAINTAINED; DISTRICT COURT JUDGMENT AFFIRMED IN

7. The district court found a due process violation based upon the credibility of Resource Bank's vice president's testimony, concluding insufficient post-sale notice by the tax sale purchasers to the mortgagee. Factual determinations of this sort are subject to review for manifest error. See **Tietjen**, 36 So.3d at 197. In such a review, the issue to be resolved by the reviewing court is not whether the district court was right or wrong, but whether the conclusion was a reasonable one. **Id.** Further, where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. **Id.**, 36 So.3d at 198.

8. We disagree with a statement made by our brethren of the Second Circuit in **Adair Asset Management**, 195 So.3d at 507–08, that it does not matter whether a tax sale party receives the notice from the tax collector or the tax sale purchaser. That statement completely ignores the clear mandate of La. R.S. 47:2156(B)(1) that the "tax collector shall send" written post-sale notice to each tax sale party, such as a mortgagee of record, to meet the requirements of due process of law. We also reiterate the distinction that the **Adair Asset Management** case did not consider a post-sale notice to a mortgagee. Additionally, we recognize that the statutory provision defining "duly notified" in the 2008 revision, at La. R.S. 47:2122(4)(b), is inconsistent with the mandate of La. R.S. 47:2156(B)(1) requiring that the tax collector be the one that sends the post-sale notice to the mortgagee. However, that inconsistency, which remained even after the 2012 amendment to La. R.S. 2156(B)(1), is a legislative issue. We find that jurisprudence concerning tax sale notices and due process requires the protection of the interests of the mortgagee in this instance.

PART, REVERSED IN PART, AND RENDERED.

Theriot, J., concurs with reasons.

THERIOT, J., concurring and assigning reasons.

I agree with the majority that the trial court properly dismissed the petitions to quiet tax title filed by the tax purchasers, Central Properties and Husker Partners/U.S. Bank, d/b/a/ Husker Partners. In addition, I agree with the majority that the tax sales of the subject properties located in Covington, Louisiana, should be declared null and void for want of due process. However, I differ with the majority's reasoning and interpretation of statutory law.

The majority finds that the tax sales at issue must be set aside because the record is devoid of evidence that the tax collector, the St. Tammany Parish Sheriff, mailed or attempted to mail post-sale written notice of the tax sales to the mortgagee, Resource Bank, as required by La. R.S. 47:2156(B). I disagree with the majority's reasoning on this point, because the plain language of the controlling statutory law states that post-sale notice provided by a tax sale purchaser to an interested party in accordance with La. R.S. 47:2156(A) satisfies the requirement that the interested party be duly notified of the tax sale under La. R.S. 47:2122(4).

The statutory scheme in effect at the time of the tax sales at issue in this case, i.e., "the 2008 revision," states that "[n]o tax sale shall be set aside except for a payment nullity, redemption nullity, or a nullity under R.S. 47:2162,[1] all of which

are relative nullities." La R.S. 47:2286. The sole potential nullity demanding judicial consideration in the case at bar is the redemption nullity, which is defined as "the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period.[2]" La. R.S. 47:2122(10).

The 2008 revision states that an interested person is "duly notified" in accordance with La. R.S. 47:2122(10) if "an effort meeting the requirements of due process of law has been made to identify and to provide that person with a notice that meets the requirements of R.S. 47:2156, 2157, 2206, 2236, or 2275 ... regardless of ... [w]hether the effort resulted in actual notice to the person[;] [or] [w]hether the one who made the effort was a public official or a private party." La. R.S. 47:2122(4) (emphasis added). In relevant part, La. R.S. 47:2156 provides:

A. Within the applicable redemptive period, the tax sale purchaser may send a written notice to any or all tax sale parties notifying the parties of the sale. The notice shall provide full and accurate information necessary to contact the tax sale purchaser, including the name, physical address, and telephone number of the purchaser. It shall be accompanied by a copy of the tax sale certificate received by the tax sale purchaser under the provisions of this Part and copies of the documents that the purchaser received with that sale. The notice shall inform the tax sale parties that the failure to redeem the property prior to the expiration of the applicable

1. Louisiana Revised Statute 47:2162 prohibits certain persons, including tax collectors and assessors, from purchasing property at a tax sale.

2. The 2008 revision defines the redemptive period as the period in which a person may redeem tax delinquent property as provided in the Louisiana Constitution. La. R.S. 47:2122(11).

redemptive period will terminate the right to redeem the property, and the purchaser will have the right to seek confirmation of the tax title and take actual possession of the property. The notice shall be sufficient if it is in the form set forth in Subsection B of this Section.

B. For each property for which tax sale title was sold at tax sale to a tax sale purchaser:

(1) If the redemptive period is greater than two years, each January or as soon as practical thereafter, each tax collector shall send a written notice by United States mail, postage prepaid, to each tax notice party and each tax sale party whose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the tax sale certificate that tax sale title to the property has been sold at tax sale.

(2) If the redemptive period is two years or less, within thirty days after filing a tax sale certificate to a third party, and thereafter each January and June or as soon thereafter as practical, each tax collector shall send a written notice by United States mail, postage prepaid, to each tax notice party and each tax sale party whose interest would be shown on a thirty-year mortgage certificate in the name of the tax debtor and whose interest was filed prior to the filing of the sale that tax sale title to the property has been sold at tax sale.

(3) The notice shall be given until the end of the applicable redemptive period. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property shall be redeemed and shall be sufficient if [set forth in accordance with the statutory form].

The majority correctly notes that La. R.S. 47:2156(B) employs use of the mandatory "shall" in detailing the requirements of the post-sale notice that must be provided by the tax collector to interested parties. Further, the majority correctly notes that there is no evidence in this case that the tax collector provided post-sale notice to Resource Bank. The majority therefore concludes that Resource Bank has a valid ground to have the tax sales nullified under La. R.S. 47:2286, In my view, however, the majority's reliance upon the statutory language of the 2008 revision is misplaced, insofar as Subsection 2122(4) clearly states that an interested party may be duly notified through post-sale notice that meets the requirements of La. R.S. 47:2156, regardless of whether such notice is effectuated by a public official or a private party, i.e., regardless of whether the post-sale notice is provided by the tax collector under Subsection 2156(B) or the tax sale purchaser under Subsection 2156(A).

In **Adair Asset Management, LLC v. Turney,** 50,574 (La.App. 2 Cir. 5/4/16), 195 So.3d 501, the Second Circuit analyzed the 2008 revision, including the provisions of La. R.S. 47:2156, and held that no redemption nullity occurred with respect to the tax sale of certain immovable property where the tax sale purchaser mailed post-sale redemption notices to all interested parties prior to expiration of the redemptive period in accordance with Subsection 2156(A). In that case, the trial court held that the tax sales at issue were null and void based upon the failure of the taxing authority, the City of Shreveport, to provide proper pre-sale notice to all interested parties in violation of the constitutional due process guarantees set forth by the United States Supreme Court in **Mennonite Bd. of Missions v. Adams,** 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

See **Adair Asset Management, LLC**, 195 So.3d at 507.

Though the trial court's judgment in **Adair Asset Management, LLC** ultimately rested upon the requirement of pre-sale notice, it must be noted [5]that both the trial court and appellate court in that case addressed the statutory requirement of post-sale notice under the 2008 revision. In pertinent part, the appellate court recognized that it was "unclear from the record which parties were sent post-sale notice by the City." Notwithstanding the possibility that the City of Shreveport had failed to provide post-sale notice to the interested parties as required by La. R.S. 47:2156(B), the court held that the tax sales were valid, reasoning: "According to [S]ubsection 2122(4), it does not matter who sends the notice, public official or private party.... Therefore, any deficiency in the notices sent by the City was, in effect, 'cured' by the [post-sale] notices sent by [the tax sale purchaser]." **Adair Asset Management, LLC**, 195 So.3d at 511 (emphasis added). The court went on to explain that La. R.S. 47:2156(A) "supplies tax sale purchasers with the option to safeguard their purchase from nullity by allowing them to send post-sale notice of the right to redeem to interested parties, at least six months before the expiration of the redemption period." **Adair Asset Management, LLC**, 195 So.3d at 511.

In my opinion, the appellate court in **Adair Asset Management, LLC**, 195 So.3d at 506, properly analyzed the plain language of the 2008 revision. It is clear to me that, through its enactment of the 2008 revision, the legislature adopted a statutory scheme under which the failure of the taxing authority to give notice to an interested party under Subsection 2156(B) is a relative nullity capable of being cured by post-sale notice provided by the tax sale purchaser under Subsection 2156(A). The legislative intent is clarified by the 2008 Official Revision Comments to Section 2156, which state: "To the extent that a person is duly notified pursuant to other provisions of this Chapter and fails to take action in the applicable time period, the failure to give the notices provided in this Section[6] do not give rise to an action based on a redemption nullity." La. R.S. 47:2156-Cmt. (f).

Nevertheless, as a constitutional matter, I agree that the trial court properly dismissed the tax sale purchasers' petitions to quiet tax title and agree that the tax sales at issue should be declared null and void for want of due process. In my view, facial compliance with the terms of the 2008 revision cannot satisfy an interested party's due process property rights, nor should it resolve our judicial inquiry concerning such rights. Indeed, it is for the courts, not the legislature, to determine the bounds of due process, and, as the United States Supreme Court held in **Mennonite Bd. of Missions**, 462 U.S. at 795, 103 S.Ct. 2706 (citing **Mullane v. Central Hanover Bank & Trust Co.**, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)), notwithstanding any contrary statutory enactments, due process requires that an interested party be provided with notice reasonably calculated, under all of the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections.

In this case, the trial court correctly analyzed the controlling statutory pronouncements and, in written reasons for judgment, noted that the legislature attempted to enact a statutory scheme under which the important notice for purposes of due process was the post-sale notice of the right of redemption. See and compare **Adair Asset Managemnet, LLC**, 195 So.3d at 509 ("[P]ursuant to the [2008 revision], as indicated by [S]ection 2161 ... a

pre[-]sale notice is no longer the important notice."). In light thereof, the trial court made a factual determination that the efforts of the tax sale purchasers to notify Resource Bank of the tax sale and its right of redemption—though ostensibly compliant with the statutory provisions of the 2008 revision—were insufficient and unreasonable under the ⌐circumstances to satisfy Resource Bank's due process interests in the delinquent tax properties under the due process clauses of the United States and Louisiana constitutions. I have reviewed the record in its entirety, and, after careful consideration, cannot say that the trial court's finding was manifestly erroneous or clearly wrong. See **Tietjen v. City of Shreveport**, 09–2116 (La. 5/11/10), 36 So.3d 192, 197 (recognizing that the manifest error standard of review applies to a trial court's factual determination that an interested party was not provided adequate notice of a pending tax sale). Thus, I respectfully concur.